**VICEROY GOLD CORPORATION,**
**a Delaware corporation,**
**Plaintiff–Appellee,**

v.

**Lloyd AUBRY, Director of the Department of Industrial Relations for the State of California; Victoria L. Bradshaw, Labor Commissioner for the State of California, Defendants–Appellants.**

**VICEROY GOLD CORPORATION,**
**a Delaware corporation,**
**Plaintiff–Appellant,**

v.

**Lloyd AUBRY, Director of the Department of Industrial Relations for the State of California; Victoria L. Bradshaw, Labor Commissioner for the State of California, Defendants–Appellees.**

Nos. 94–16614, 94–16672.

United States Court of Appeals,
Ninth Circuit.

Submission Deferred Nov. 8, 1995.

Submitted Nov. 28, 1995.*

Decided Jan. 23, 1996.

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

John M. Rea, Chief Counsel, Vanessa L. Holton, Asst. Chief Counsel, James D. Fisher, Department of Industrial Relations, San Francisco, California, for defendants-appellants-cross-appellees Lloyd W. Aubry, Jr., Director Dept. of Ind. Relations.

H. Thomas Cadell, Jr., Chief Counsel, Miles E. Locker, Staff Counsel Dept. of Ind. Relations, Div. of Labor Standards Enforcement, San Francisco, California, for defendants-appellants-cross-appellees, Victoria Bradshaw, Labor Comm'r, Div. of Labor Standards Enforcement.

Charles S. Birenbaum, Marion I. Quesenbery, Scott L. Gardner, Thelen, Marrin, Johnson & Bridges, San Francisco, California, for plaintiff-appellee-cross-appellant.

Before: CHOY, WIGGINS, and LEAVY, Circuit Judges.

## OPINION

LEAVY, Circuit Judge:

### OVERVIEW

The State of California appeals the district court's grant of partial summary judgment in favor of Viceroy Gold Corporation (Viceroy) on the ground of National Labor Relations Act, 29 U.S.C. § 151 et seq. (NLRA), preemption of California Labor Code § 750.5. Viceroy cross-appeals the district court's judgment dismissing its other challenges to § 750.5 and its challenge to Cal.Lab.Code § 750. Viceroy also appeals the scope of the district court's injunction. The district court entered judgment on August 8, 1994 and the parties timely filed an appeal and cross-appeal. Subsequently, the California legislature amended both sections of the California Labor Code which are at issue in this appeal. California 1995 Legislative Service, Chapter 903 A.B. No. 739 (1995). These amendments are effective January 1, 1996. *Id.* The amendments moot neither the appeal nor the cross-appeal. The judgment of the district court in favor of Viceroy Gold Corporation on its NLRA preemption claim is reversed and remanded for entry of judgment in favor of the State of California on all of Viceroy's claims.

### FACTS AND PROCEEDINGS BELOW

Viceroy Gold Corporation (Viceroy) operates the "Castle Mountain Mine," a gold processing facility in San Bernardino County, California. Viceroy does not actually mine rock from the earth; it receives already mined rock and processes it along a production line at Castle Mountain Mine. The process uses a technology developed in the 1970's called "cyanide heap leach" mining to extract gold from the rock.

Castle Mountain Mine is a non-union facility. It operates twenty-four hours a day, seven days a week, using rotating shifts. Mine employees currently work eight-hour shifts and forty-hour work weeks. Because housing at the facility is limited, most of the mine workers have a daily commute of seventy-five miles or more each way. Many of Viceroy's employees have requested a shorter work week—with fewer days at 12 hours per day—to reduce the commute and give them more free time.

Viceroy has been unable to implement the requested change in work schedules because of the restrictions in California Labor Code § 750. Section 750 in its original form was enacted in 1909. The recent amendments did not change the relevant restrictions. In its current form § 750 states, in relevant part:

(a) Except as otherwise provided in this chapter, no employee may be employed for a period that exceeds eight hours within any 24–hour period ..., for all persons who are employed or engaged in work in:

(1) Underground mines or underground workings.

(2) Smelters and plants for the reduction or refining of ores or metals.

Cal.Lab.Code § 750 (as amended by 1995 California Legislature).

In 1983, the California Legislature added § 750.5. This amendment created an exception to the eight-hour shift limitation in § 750:

The provisions of Section 750 shall not prohibit a period of employment up to 12 hours within a 24–hour period when the employer and a labor organization representing employees of the employer have entered into a valid collective-bargaining agreement where the agreement expressly provides for the wages, hours of work, and working conditions of the employees. former Cal.Lab.Code § 750.5

Because Viceroy is a non-union mine it could not take advantage of the exception in § 750.5.

In November 1992 Viceroy petitioned the California Division of Labor Standards Enforcement (DLSE) for relief from § 750's eight-hour cap on the ground that the § 750.5 exception, if applicable only to union mining workers, was preempted by federal law. Viceroy asked DLSE to interpret § 750.5 to allow nonunion employees to work over eight hours if various safeguards were in place. On May 3, 1993, Viceroy also petitioned the DLSE for a ruling that § 750 was inapplicable to operations at the Castle Mountain Mine because § 750 was enacted in 1909 and intended to regulate a different type of mining facility. On June 3, 1993, the DLSE ruled that § 750 applied to the Castle Mountain Mine.

On November 18, 1993, Viceroy brought this action requesting declaratory and injunctive relief. Viceroy asserted that § 750.5 put Castle Mountain Mine at a competitive disadvantage relative to union mines and that "operational efficiency, safety and employee morale are all adversely impacted by [DLSE's] interpretation and enforcement of § 750.5." The complaint alleged six grounds for relief:

(1) as a matter of legislative intent and statutory construction, § 750 was not meant to apply to modern facilities such as Castle Mountain Mine;

(2) section 750.5 is preempted by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151, et seq., as amended, under the principle enunciated in *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976);

(3) section 750.5 is preempted by the NLRA under the principle articulated in *San*

*Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959);

(4) section 750.5 is preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141, et seq., as amended;

(5) section 750.5 is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq.; and

(6) section 750.5 violates the Equal Protection Clause of the United States Constitution.

Viceroy moved for summary judgment on all of its claims. The State cross-moved for summary judgment on Viceroy's ERISA and LMRA preemption claims. The district court granted summary judgment on behalf of the State against Viceroy's ERISA and LMRA claims. The district court denied Viceroy's motion for summary judgment on Viceroy's first claim that § 750 did not apply to Castle Mountain Mine. The court then found that Viceroy had standing to bring preemption claims under the NLRA both on behalf of itself and on behalf of its employees. The court granted summary judgment on behalf of Viceroy on its claim that § 750.5 is preempted by the NLRA under the *Machinists* doctrine. The court declined to rule on Viceroy's *Garmon* preemption and equal protection claims and denied Viceroy's motion for summary judgment on those claims without prejudice. The district court entered judgment on August 6, 1994, declaring § 750.5 invalid and enjoining the State of California from enforcing § 750.5.

The State of California filed a timely notice of appeal on September 6, 1994. On appeal, the State argues that Viceroy does not have standing to assert claims under the NLRA based either on its own rights or the rights of its employees. The State of California also argues that California Labor Code § 750.5 is not preempted by the NLRA under the *Machinists* doctrine. Viceroy filed a timely notice of cross-appeal on September 20, 1994. On cross-appeal Viceroy argues that § 750.5 is preempted by the NLRA under the *Garmon* doctrine, that § 750 does not apply to Viceroy, or, if it does apply, both § 750 and § 750.5 violate the Equal Protection Clause. Viceroy also argues that the district court erred in excluding language from its injunc-

tion that would permit non-union employers and employees to schedule workdays in excess of eight hours in a 24-hour period provided the non-union employees seek overtime in a concerted, protected manner under the NLRA.

The 1995 amendments to §§ 750 and 750.5 did not change the provisions of § 750 construed by the district court to apply to Castle Mountain Mine. The amendments to § 750.5 provide an additional exception to the maximum hours of employment set in § 750 when a ⅔ majority of the employees who work for a particular employer vote, in an election conducted at the expense of the employer pursu-

ant to prescribed procedures, to adopt a policy that authorizes a regular workday of more than 8 hours in a 24-hour period. Cal.Lab. Code § 750.5(b).[1] Viceroy argues that effect of the amended § 750.5(b) is to penalize individuals who choose to exercise their right to refrain from union activities by making it more burdensome to work a shorter work week, thereby perpetuating the problems of the former § 750.5.

## ANALYSIS

### Standards of Review

Standing is a question of law reviewed de novo. *Barrus v. Sylvania*, 55 F.3d

---

1. Section 750.5 now provides in relevant part: Notwithstanding Section 750, an employee may be employed for a period that exceeds eight hours within a 24-hour period, under the circumstances specified in subdivision (a), (b), or (c), as follows:

(a) If the employer and a labor organization representing employees of the employer have entered into a valid collective bargaining agreement that expressly provides for the wages, hours of work, and working conditions of the employees.

(b) If a two-thirds majority of the affected employees of that employer whose hours are regulated by this chapter have voted in an election to adopt a policy that specifies periods of work that may exceed eight hours in a 24-hour period, and the employer adopts that policy, subject to all of the following conditions:

(1) The agreement adopted with respect to that policy reflects the results of the election.

(2) The election is conducted, at the expense of the employer, with the use of secret ballots, during regular working hours. Upon the written request of an employee to his or her employer, or to the Labor Commissioner, made no later than 10 days prior to the date set for the election, the employer shall cause the election to be conducted by a neutral third party with experience in conducting employee elections. If such a written request is made to the commissioner pursuant to this paragraph, the commissioner shall not disclose the identity of the employee and shall notify the employer, no later than five days prior to the date set for the election, that the election is required to be conducted by a neutral third party. Such an election may be conducted by utilizing mail ballots.

(3) All employees of that employer whose hours are regulated by this chapter and who have become employed by that employer within 24 hours of the time the election is commenced are eligible to vote in the election.

(4) The policy shall be effective for the period specified therein, not exceeding 12 months.

(5) No later than 14 days prior to the date set for an election, the employer shall do all of the following:

(A) Provide a written notice to the affected employees that describes the effects the proposed work schedule would have on the employees' wages, hours, and benefits, and the employees' rights under this chapter, including the right to request that the election be conducted by a neutral third party pursuant to this section, and to file a complaint against the employer pursuant to this chapter.

(B) Provide a written statement to the affected employees, prepared by a neutral source knowledgeable in health and safety matters and unaffiliated with the employer, that explains any health and safety considerations of extended work shifts.

(C) Hold informational meetings for the affected employees on each shift during the regular working hours of the affected employees. At each of these meetings, the employer shall explain the effect of the proposed policy on the hours and compensation of the employees. Written notice of the time, date, place, and purpose of these informational meetings shall be conspicuously posted in at least three locations throughout the mine site for at least seven consecutive days before the date of the meetings. Written notice of the time, date, place, and purpose of the election shall be posted in the same manner and for the same period. Failure to comply with the procedural requirements of this paragraph shall void the results of the election for purposes of this section.

(6) Any employer that establishes a regular scheduled workday pursuant to this subdivision shall make a reasonable attempt to place an employee, who was eligible to participate in the election that authorized an extended workday schedule and who is unable or unwilling to work the extended schedule, in an alternative work assignment that the employee is capable of performing. An employer shall not be required to offer an alternative work assignment to an employee if an alternative work assignment that the employee is capable of performing is not available or if the employee commenced his or her employment after the election.

468, 469 (9th Cir.1995). A grant of summary judgment is also reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). The district court's interpretation of a statute is a question of law reviewed de novo. *Palmer v. United States,* 945 F.2d 1134, 1135 (9th Cir.1991). The scope of injunctive relief is reviewed for an abuse of discretion or application of erroneous legal principles. *Casey v. Lewis,* 43 F.3d 1261, 1266 (9th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 1997, 131 L.Ed.2d 999 (1995).

### Discussion

1. *Viceroy's Standing.* The district court found that Viceroy had standing to bring its NLRA preemption claims. The State of California argues that the district court erred because the injury Viceroy alleges is "not redressable by a favorable decision," citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1992).

■ The determination whether Viceroy has standing involves both constitutional and prudential considerations. *McMichael v. County of Napa,* 709 F.2d 1268, 1269 (9th Cir.1983) (citations omitted). "The constitutional limitations of article III contain three components: (1) a threatened or actual distinct and palpable injury to the plaintiff (2) a fairly traceable causal connection between the alleged injury and the defendant's challenged conduct; and (3) a substantial likelihood that the requested relief will redress or prevent the injury." *Hong Kong Supermarket v. Kizer,* 830 F.2d 1078, 1081 (9th Cir. 1987) (citations omitted).

■ Viceroy's asserted injury, the competitive disadvantage it suffers relative to unionized mines and the pressure to unionize, is an injury in fact. *See Associated Builders & Contractors v. Baca,* 769 F.Supp. 1537, 1542 (N.D.Cal.1991), *aff'd sub nom Chamber of Commerce of United States v. Bragdon,* 64 F.3d 497 (9th Cir.1995). The State's enforcement of §§ 750 and 750.5 has caused this injury and, certainly, striking down § 750.5 would redress Viceroy's injury by eliminating whatever competitive advantage unionized mines enjoy. Thus, Viceroy has Article III

standing to assert NLRA preemption of § 750.5.

■ Among the prudential limitations on standing is the requirement that Viceroy "allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question." *Hong Kong Supermarket,* 830 F.2d at 1081 (citations omitted). The State of California argues that the NRLA does not protect nonunion employers from a state's grant of competitive advantage to union employers. Thus, according to the State's argument, Viceroy's interest is not within the zone of interests protected by the NLRA. Viceroy asserts that the NRLA protects it as an employer from the pressure to unionize created by § 750.5. This is within the zone of interests regulated by the NLRA. *See, e.g., NLRB v. Savair Mfg. Co.,* 414 U.S. 270, 278, 94 S.Ct. 495, 499, 38 L.Ed.2d 495 (1973). Thus, Viceroy has also satisfied the prudential requirements for standing.

■ 2. *Viceroy's Standing to Sue on Behalf of Its Employees.* The district court also found that "Viceroy has standing to bring its *Machinists* preemption claim based on its employees' freedom of choice." Prudential limitations on standing "require that parties assert their own rights rather than rely on the rights or interests of third parties." *Hong Kong Supermarket,* 830 F.2d at 1081 (citations omitted). The purpose of this requirement is twofold: (1) to avoid adjudicating rights a third-party may not wish to assert; and (2) to ensure effective advocacy. *Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976). The Supreme Court has considered two factors in determining whether to permit a party to bring suit on behalf of another: (1) the relationship of the litigant to the person whose right he seeks to assert; and (2) the ability of the third party to assert his own right. *Id.* at 114–15, 96 S.Ct. at 2874–75.

In explicating the first factor the Supreme Court has stated: "[I]f the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary." *Id.* Viceroy em-

ployees have asserted the right "to work the same hours regardless of whether [they] decide to engage in Union activity or to refrain from Union activity." This is inextricably bound up with Viceroy's desire to schedule longer workdays and remain non-union. On this narrow issue, Viceroy's interest is sufficiently aligned with that of its employees.

The second factor is more problematic. "Even where the relationship is close, the reasons for requiring persons to assert their own interests will generally still apply." *Id.* at 116, 96 S.Ct. at 2875. There must be some "genuine obstacle" to such assertion. *Id.* The district court found that Castle Mountain employees probably would not be motivated to assert their own interests because they lack a sufficient individual economic stake in the outcome. A simple lack of motivation does not constitute a "genuine obstacle" to asserting an interest. Viceroy does not have standing to assert the NLRA rights of its employees. However, because Viceroy has standing to assert the NRLA claims on its own behalf, these claims were properly before the district court.

■■■ 3. *Preemption of § 750.5 by NLRA and Machinists Doctrine.* The district court held that § 750.5 was preempted under the *Machinists* doctrine. *Machinists* preemption "protects against state interference with policies implicated by the structure of the [NLRA] itself, by pre-empting state law and state causes of action concerning conduct that Congress intended to be unregulated." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985). The district court concluded that § 750.5 was preempted because it conflicted with § 7 of the NLRA which protects the rights of employees to "form, join, or assist labor organizations . . . and to refrain from any or all such activities . . . ." 29 U.S.C. § 157. The district court relied on the recent Supreme Court decision in *Livadas v. Bradshaw,* —— U.S. ——, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) to reach this conclusion. *Livadas* involved a challenge to the State of California's policy of not enforcing Cal.Lab.Code § 201 on behalf of employees covered by collective bargaining agreements containing arbitration claus-

es. Section 201 requires employers to pay all wages due immediately upon an employee's discharge. Cal.Lab.Code § 201. The state construed a different state law to prevent the enforcement of § 201 on behalf of employees covered by collective bargaining agreements containing arbitration clauses.

The Supreme Court held that this policy was preempted by section 7:

> While the NLRA does not expressly recognize a right to be covered by a collective-bargaining agreement, in that no duty is imposed on an employer actually to reach agreement with represented employees, see 29 U.S.C. § 158(d), a State's penalty on those who complete the collective-bargaining process works an interference with the operation of the Act . . . —— U.S. at —— n. 11, 114 S.Ct. at 2074 n. 11

Because § 7 also protects the right to choose not to unionize, the district court found that former § 750.5 improperly interfered with the "mine workers" rights freely to choose *not* to bargain collectively" because it granted "benefits only to unionized mine workers."

The Supreme Court was careful to state in *Livadas* that its holding "cast no shadow on the validity of . . . familiar and narrowly drawn opt-out provisions." *Id.* at ——, 114 S.Ct. at 2082. The Supreme Court noted: "[n]or does it seem plausible to suggest that Congress meant to preempt such opt-out laws as 'burdening' the statutory right of employees not join unions by denying nonrepresented employees the 'benefit' of being able to 'contract out of such standards." *Id.* at —— n. 26, 114 S.Ct. at 2082 n. 26.

The district court distinguished §§ 750 and 750.5 from the opt-out provisions the Supreme Court endorsed in *Livadas:*

> Any attempt to characterize the eight-hour shift limitation as a 'minimum benefit' for mine workers is disingenuous in light of the overwhelming evidence that the prohibition is highly onerous to employees and employers of the mining industry. 858 F.Supp. at 1023.

This view of § 750 is erroneous. While Viceroy and its employees may find the eight-hour day requirement burdensome, § 750 undoubtedly provides some minimum protection

to non-union mine workers, while permitting a longer work day through the protections provided by the collective bargaining or the election process set forth in § 750.5.

This conclusion is supported by this court's most recent application of *Livadas.* In *National Broadcasting Co., Inc. v. Bradshaw,* 70 F.3d 69 (9th Cir.1995) (as amended), NBC challenged a California law which requires employers in the broadcast industry to pay double time for all hours worked over twelve hours in a day, unless the employees are covered by the terms of a collective bargaining agreement providing specified minimum overtime benefits. NBC argued that *Livadas* required the court to hold that the exemption was invalid. This court rejected that argument: "[w]e cannot accept this position as the Court in Livadas stressed that its holding 'cast no shadow on the validity of ... familiar and narrowly drawn opt-out provisions.' California has tailored such an opt-out provision in [the challenged exemption]." *NBC,* 70 F.3d at 73. The California statute at issue in *NBC* could have provided an incentive to unionize or to remain non-union, depending on the difference between the contracted for and statutory overtime pay. A potential benefit or burden in application does not invalidate an "opt-out provision." Like the California Statute at issue in *NBC,* § 750.5 is a narrowly tailored opt-out provision and is not preempted by the NLRA.

■■■■ *4. Preemption under the Garmon doctrine.* On cross-appeal Viceroy argues that § 750.5 is preempted by the NLRA under the *Garmon* doctrine. The district court did not rule on this issue, because it found preemption under the *Machinists* doctrine.[2] Under the *Garmon* rule, "[s]tates may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dep't of Industry v. Gould, Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 1060, 89 L.Ed.2d 223 (1986). The purpose of the *Garmon* rule is "to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the 'integrated scheme of regulation'

established by the NLRA." *Golden State Transit Corp. v. Los Angeles,* 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986).

■■■■ Viceroy argues that § 750.5 "interferes with representation issues and Section 7 rights and, therefore, is preempted." Because §§ 750 and 750.5 constitute a minimum employment standard and an opt-out provision, there is no *Garmon* preemption. "[The] establishment of a minimum labor standard does not impermissibly intrude upon the collective bargaining process." *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 23, 107 S.Ct. 2211, 2223, 96 L.Ed.2d 1 (1987). "The fact that the parties are free to devise their own ... arrangements [through the collective bargaining process] ... strengthens the case that the statute works no intrusion on collective bargaining." *Id.* at 22, 107 S.Ct. at 2223.

■■■■ *5. Application of § 750 to Castle Mountain Mine.* On cross-appeal Viceroy argues that § 750 does not apply to Castle Mountain Mine because it was enacted in 1909 to protect workers from conditions that do not exist today at its facility. The district court held that the "plain and unambiguous language of section 750" applied to Viceroy. Section 750 applies to (a) underground mines or underground workings and (b) smelters and plants for the reduction or refining of ores or metals. Castle Mountain Mine is not an underground mine, but it is a gold smelting plant. Under California law, statutory construction begins with the language of the statute. *See Delaney v. Superior Court,* 789 P.2d 934, 268 Cal.Rptr. 753, 50 Cal.3d 785 (Cal.1990). If the language of the statute is clear and unambiguous, the statutory analysis ends. *Id.* Section 750 is unambiguous and, thus, is applicable to Viceroy's operations at Castle Mountain Mine.

■■■■ *6. Violation of Equal Protection Clause.* Viceroy argues that DLSE's enforcement of §§ 750 and 750.5 violates the Equal Protection Clause of the United States Constitution. U.S. Const., amend. XIV, § 1. The distinctions the State of California draws between mine workers and other workers

2. This issue and the Equal Protection issue (page 16) are purely ones of law and do not depend on the factual record. Therefore, we may consider

them. *In re Wind Power Sys. Inc.,* 841 F.2d 288, 290 n. 1 (9th Cir.1988).

and non-union and union mine workers do not impinge fundamental rights or suspect classifications. Therefore, the Equal Protection Clause requires "only that the classification challenged be rationally related to a legitimate state interest." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). California has a legitimate interest in the safety of mine workers. A limitation on work hours is rationally related to that purpose. Moreover, the California Legislature could rationally have believed that workers covered by collective bargaining agreements or who have voted by a ⅔ majority to adopt longer work hours have greater power to ensure safe working conditions than workers with individual employment agreements. Thus, §§ 750 and 750.5 are rationally related to California's legitimate interest in mine worker safety and do not violate the Equal Protection Clause.

Because we reverse the judgment of the district court in favor of Viceroy, we need not consider Viceroy's challenge to the scope of the injunction.

## *CONCLUSION*

The judgment of the district court in favor of Viceroy Gold on Viceroy's NRLA preemption claim is reversed and remanded for entry of judgment in favor of the State of California on all of Viceroy's claims.

REVERSED AND REMANDED.