**In re Frederick G. and Eugenia RAWLINSON, Debtors.**

**Frederick G. and Eugenia RAWLINSON, Appellees,**

v.

**John T. KENDALL, Chapter 7 Trustee, Appellant.**

**BAP No. NC–96–1669–VMeO.**

**Bankruptcy No. 95–49017 NK.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 23, 1997.

Decided May 30, 1997.

James P. McBride, Hayward, CA, for Appellees.

Eric A. Nyberg, Kornfield, Paul & Bupp, Oakland, CA, for Appellant.

Before: VOLINN, MEYERS and OLLASON, Bankruptcy Judges.

*OPINION*

VOLINN, Bankruptcy Judge.

OVERVIEW

A chapter 7 trustee objected to the debtors' claimed exemption of his Individual Re-

tirement Account (IRA) under California law. Following a hearing, the bankruptcy court determined that as a matter of law, an IRA cannot be exempted. The debtors appeal. We reverse.

## BACKGROUND FACTS

The debtors, Frederick and Eugenia Rawlinson, filed a voluntary chapter 7[1] petition on December 27, 1995. In California, debtors may choose between the exemptions available to non-bankrupts, and the state bankruptcy exemptions. *See* Cal.Civ.Pro. §§ 703.140(b)(1–11), 704.010 and 11 U.S.C. § 522(d); *see also In re MacIntyre*, 74 F.3d 186, 187 (9th Cir.1996). The debtors here elected the California state exemptions, which are identical to the federal exemptions, pursuant to Cal.Civ.Pro. § 703.140(b). On their schedules, the debtors claimed the husband's IRA account, worth approximately $47,000, as exempt pursuant to Cal.Civ.Pro. § 703.140(b)(10)(E).[2] The trustee objected to the debtors' claimed exemption in the IRA account.

Following a hearing on the trustee's objection, the bankruptcy court, relying on *In re Innis*, 62 B.R. 659, 660 (Bankr.S.D.Cal.1986), determined that, as a matter of law, an IRA may not be exempted under Cal.Civ.Pro. § 703.140(b)(10)(E). The *Innis* court noted four characteristics "which distinguish an exemptible annuity or pension contract from the standard IRA":

1. An IRA is a savings account with tax benefits and gratuitous (sic) contributions by the debtor rather than a plan or policy provided by an employer or other party;

2. Annuities and pensions contemplate only future periodic payments, whereas an IRA is payable in a lump sum;

3. The depositor/debtor has complete control over the account, rendering no

guarantee that the funds will actually be retained until retirement or disability;

4. An IRA contemplates a contractual arrangement whereby the debtor deals directly with the depository institution rather than having the fund provided by an employer or other third party.

*Innis*, 62 B.R. at 660 (quoting *In re Peeler*, 37 B.R. 517, 518 (Bankr.M.D.Tenn.1984)). Accordingly, the trial court sustained the trustee's objection. The debtors filed this timely appeal.

## ISSUE

Whether the trial court erred when it ruled that as a matter of law IRAs may not be exempted under Cal.Civ.Pro. § 703.140(b)(10)(E).

## STANDARD OF REVIEW

The bankruptcy court's application and interpretation of California law is reviewed *de novo*. *Viceroy Gold Corp., v. Aubry*, 75 F.3d 482, 487 (9th Cir.1996).

## DISCUSSION

We must first resolve an initial question: which law shall we apply to this question. The debtors ask the panel to reverse the trial court, relying on what they call "the leading case" on the federal exemption, *In re Cilek*, 115 B.R. 974 (Bankr.W.D.Wis.1990). However, *Cilek* does not address the California statute at issue, which, as mentioned above, is identical to the federal exemption. For this reason, the trustee urges the panel to affirm, principally relying on the concerns raised by *In re Innis*, 62 B.R. 659 (Bankr. S.D.Cal.1986), which, at the time the case was argued, was the only case to determine whether a debtor may claim an exemption in an IRA pursuant to Cal.Civ.Pro. § 703.140(b)(10)(E).[3] The trustee argues,

---

**1.** Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "rule" or "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

**2.** Cal.Civ.Pro. § 703.140(b)(10)(E) exempts from property of the estate the debtor's right to receive

"a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service to the extent reasonably necessary for the support of a debtor and any dependent of the debtor ... "

**3.** More recently, *In re McKown*, 203 B.R. 722 (Bankr.E.D.Cal.1996) rejected *Innis* and allowed

*inter alia,* that the panel should not use cases interpreting the federal exemption to interpret Cal.Civ.Pro. § 703.140(b)(10)(E) because the California legislature specifically exempted IRAs under the state exemptions but not under the federal exemptions. He argues the legislature created a balance between the two sets of exemptions which would be upset if courts read one set of exemptions into the other. However, the California legislature's adoption of the federal exemptions as a whole compels the conclusion that the legislature intended that the state exemptions would have the same effect as the bankruptcy code exemptions. Therefore, to resolve the issue presented, we will examine cases decided under the federal statutes.

*Is an IRA a "similar plan" for purposes of § 522(d)(10)(E)?*

■ Although various courts have addressed the exemptibility of IRAs, the Ninth Circuit Court of Appeals has not ruled on this issue.[4] The Supreme Court has indicated *in dicta* that IRAs may be exempted pursuant to section 522(d)(10)(E). *See Patterson v. Shumate,* 504 U.S. 753, 763, 112 S.Ct. 2242, 2249, 119 L.Ed.2d 519 (1992). In *Patterson,* a Chapter 7 trustee sought to include the debtor's interest in an Employee Retirement Income Security Act (ERISA) plan in the bankruptcy estate. The debtor argued that ERISA-qualified plans were excluded from the estate pursuant to section 541(c)(2).[5] The trustee presented an alternate reading of section 541(c)(2), contending, *inter alia,* that such a construction of section 541(c)(2) would render section 522(d)(10)(E) superfluous: if ERISA-qualified plans were not part of the bankruptcy estate, the trustee argued, why would Congress have provided a separate exemption for them. The Court, in

rejecting the trustee's argument, responded that section 522(d)(10)(E) was not superfluous because it applied to more than ERISA-qualified plans:

> [I]ndividual retirement accounts ... are specifically excepted from ERISA's antialienation requirement. Although a debtor's interest in these plans could not be excluded under § 541(c)(2) because the plans lack transfer restrictions enforceable under "applicable nonbankruptcy law," *that interest nevertheless could be exempted under § 522(d)(10)(E).*

*Patterson v. Shumate* 504 U.S. 753, 763, 112 S.Ct. 2242, 2249, 119 L.Ed.2d 519 (1992) (emphasis added) (citations and footnotes omitted). Although this statement is *dicta,* "we treat Supreme Court dicta with due deference." *United States v. Baird,* 85 F.3d 450, 453 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 487, 136 L.Ed.2d 380 (1996).

Further persuasive support for the debtors' position is provided by *In re Carmichael,* 100 F.3d 375 (5th Cir.1996) in which the Fifth Circuit Court of Appeals, determined "that for purposes of § 522(d)(10)(E), an IRA is a 'similar plan or contract.'" *Carmichael,* 100 F.3d. at 378. The court gave four reasons for its decision. First, the court stated that, like the four retirement vehicles listed by name in paragraph (d)(10)(E), "IRAs ... are substitutes for future earnings in that they are designed to provide retirement benefits to individuals." According to the court: "The age limitation on withdrawal illustrates Congress' intent to provide income to an individual in his advanced years." Thus, "[t]o exempt an IRA as a 'similar plan or contract,' then, is consistent with the treatment of other deferred compensation and retirement benefits." *Id.*

a debtor to exempt an IRA under the California statute.

4. *At least two bankruptcy courts in this circuit* have found that an IRA may be exempted under the federal exemptions of section 522(d)(10)(E). *See In re Hickenbottom,* 143 B.R. 931, 934 (Bankr.W.D.Wash.1992)("The IRA accounts are exemptible by the debtors"); *In re Bell,* 119 B.R. 783, 785 (Bankr.D.Mont.1988) (finding that "an IRA is exempt under 522(d)(10)(E) if it is shown

to be 'reasonably necessary' for the support of the debtor and any dependent of the debtor").

5. Section 541(c)(2) provides the following exclusion from the otherwise broad definition of "property of the estate" contained in section 541(a)(1): "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

■ Second, the court reasoned that statutory construction required its interpretation because "subparagraph (d)(10)(E)(iii) specifically denies exemption to those 'similar plans or contracts' that come within the proscription of (d)(10)(E)(i) and (ii) and also fail to qualify under, inter alia, IRC § 408, a provision dealing exclusively with IRAs." *Id.* Because the Internal Revenue Code section refers to IRAs in the exception "makes inescapable the conclusion that at least some—if not all—IRAs were intended to be included in the phrase 'similar plan or contract.' Were that not so, there would be no exempt § 408 plans or contracts from which non-§ 408 plans or contracts could be exceptions." *Id.* The court stated that because the phrase "similar plan or contract" in subsection (iii)'s specific exception to the exemption includes IRAs that qualify, that same phrase used in the general exemption of paragraph (d)(10)(E) must likewise include qualifying IRAs. "'There is a presumption that the same words used twice in the same act have the same meaning.'" *Id.* (quoting *In re Hall,* 151 B.R. 412, 425 (Bankr. W.D.Mich.1993)).

Third, the court looked to the policy ramifications of not excluding IRAs:

> to conclude that IRAs are not exempt would be to suggest that Congress intended to penalize self-employed individuals for their choice of the form in which their retirement assets are held. This result would be antithetical to Congress' solicitude for retirement benefits for self-employed individuals. By analogizing the treatment of IRAs to Congress' treatment of other retirement plans in § 522(d)(10)(E), we find it more than plausible to infer that Congress intended for IRAs to be treated similarly for purposes of exemption.

*Carmichael,* 100 F.3d at 378. *See also Clark,* 711 F.2d 21, 23–24 (3d Cir.1983) ("the distinction required by the majority's reasoning [in a case finding a Keogh plan to be non-

exemptible], effectively penalizes self-employed individuals for the form in which their retirement assets are held") (Becker, J., concurring).

Finally, the court looked to the purposes of bankruptcy law and determined that "exempting IRAs comports with the very policy furthered by exemptions—providing the honest debtor with a fresh start. More specifically, exempting IRAs furthers the policy behind the pension exemption—protecting a debtor's future income stream." *Carmichael,* 100 F.3d at 378. The court further reasoned that the Code "contains a safeguard to avoid potential abuse when it limits exemption to only such portion of the otherwise exemptible payments that the bankruptcy court deems necessary for the support of the debtor and any of his dependents." *Id.*

It should be noted that in *Hebert v. Fliegel* the Ninth Circuit, in deciding whether a self-employed physician could exempt his Keogh pension plan under Oregon law,[6] rejected an argument similar to the third argument advanced by the *Carmichael* court above. *Hebert v. Fliegel,* 813 F.2d 999, 1001 (9th Cir. 1987). The court distinguished Keogh plans from company funded pension plans:

> The latter are funded and controlled by the employer, and carry with them well-defined, employer-determined guidelines on when an employee's interest in the funds vests and when such funds may be withdrawn. Keogh plans, on the other hand, are funded exclusively by the self-employed individual, who retains complete control over the amounts invested and the management of the funds. This individual also retains the right to terminate the plan and withdraw the funds at any time, subject only to a tax penalty.

*Id.* The court also asserted that most courts that had addressed the policy issues "concluded that the benefits to be derived from granting an exemption for self-funded plans are outweighed by the 'strong public policy

---

**6.** The Oregon law in question provided in pertinent part:

> All pensions granted to any person in recognition by reason of a period of employment by or service for the government of the United States, or any state, or political subdivision of

any state, or any municipality, person, partnership, association or corporation, shall be exempt from execution and all other process, mesne or final . . . .

*Hebert v. Fliegel,* 813 F.2d 999, 1002 (9th Cir.1987)(quoting Or.Rev.Stat. § 23.170 (1985)).

that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors.'" *Id.* (quoting *Matter of Witlin,* 640 F.2d 661, 663 (5th Cir.1981)).

Although the *Hebert* court's policy argument is strong, it does not apply with the same force to IRAs. While there are similarities between IRAs and Keogh plans,[7] there are significant differences between them, the most important of which may be that "the ceiling on annual contributions to IRAs is much lower than that permitted to Keoghs."[8] Karen Rubner Grotberg, *There Should Be Parity in Bankruptcy Between Keogh Plans and Other ERISA Plans,* 80 Nw. U.L.Rev. 165, 172 (March 1985). Because a taxpayer is capable of investing a relatively small amount of money in an IRA, a debtor will generally be unable to protect significant assets in an IRA. *See Hickenbottom,* 143 B.R. at 933 ("By virtue of the $2,000 limitation on the amount that may be contributed to an IRA each year, such accounts are typically much smaller than other pension plans that are fully protected.").

There are situations in which an IRA may hold significant assets. For instance, an employee may "roll-over" a company 401(k) plan account to an IRA at the end of employment.[9] The Ninth Circuit has found that a 401(k) plan is not property of the estate. *In re Kincaid,* 917 F.2d 1162 (9th Cir.1990). Thus, if the trustee's contention were to prevail, a debtor who loses her job and moves her retirement funds out of her employer's 401(k) plan into an IRA would likely lose all of her retirement funds if she filed for bankruptcy. The *Carmichael* court recognized this possibility in its discussion of policy concerns raised if IRAs are non-exemptible:

> Indeed, to hold otherwise would be to create a trap for the unwary in those frequent instances in which funds from other exempt plans are "rolled over" into IRAs when those other plans terminate or when employment ceases. After all, Congress has, in the overall retirement scheme of the IRC, selected the IRA to serve as a sort of universal conductor through which transfers must pass if they are to avoid the rocks and shoals of inadvertent taxable events.

*Carmichael,* 100 F.3d at 378. *See also Hickenbottom,* 143 B.R. at 934 ("To conclude that an IRA is not exemptible under Section 522 would discriminate against self-employed individuals whose marginal income and lack of sophistication preclude their participation in other, less limited plans.").

*Is a present payment necessary?*

Section 522(d)(10)(E) (and Cal.Civ.Pro. § 703.140(b)(10)(E)) exempt "a debtor's right to receive" a payment under certain specified plans or a similar plan. The trustee argues, *inter alia,* that the debtor's IRA does not qualify for the exemption because the debtor is not receiving a payment. In *In re Huebner,* 986 F.2d 1222, 1224 (8th Cir.1993), the Eight Circuit Court of Appeals denied an exemption under similar facts because the Iowa exemption statute at issue limited the debtor's "exemption to 'rights in' an annuity

---

**7.** Contributions to both IRAs and Keogh plans remain tax free until the participant begins to make withdrawals, which may be made without penalty at age 59½ and must begin by age 70½. A ten percent additional tax penalty for premature distributions applies to both, and if either plan is terminated, the sum total of contributions and accrued interest is taxable. Karen Rubner Grotberg, *There Should Be Parity in Bankruptcy Between Keoah Plans and Other ERISA Plans,* 80 Nw. U.L.Rev. 165, 172 (March 1985).

**8.** Self-employed taxpayers, including sole proprietors and partners, can contribute more than $30,000 annually (or 25% of a participant's compensation, if less) to a defined contribution Keogh plan, or provide for a maximum benefit of $90,000 a year under a defined benefit Keogh plan. Robert John Nagoda II and Ralph D. Black, *Greater Income Tax and Estate Planning Opportunities Available with Keogh Plans,* 14 Est. Plan. 354, 354 (Nov./Dec.1987). On the other hand, working individuals may contribute up to the lesser of $2,000 or 100 percent of annual compensation or earned income to an IRA. Married couples with only one working spouse may contribute up to $2,250 annually. Grotberg, *supra* note 6 at 171–72.

**9.** A 401(k) plan is an ERISA qualified plan established by an employer. An employee may contribute pre-tax dollars to the plan. Often, the employer will match the employee's contribution.

*payment."*[10] According to the court, "unlike other states ... Iowa has no statute granting an exemption for all or any part of the undistributed corpus of an annuity contract." *Id.*[11]

In *In re Clark,* the Third Circuit used similar reasoning to find a Keogh plan could not be exempted because the debtor had no immediate right to payment under the retirement plan: "[t]he exemption of future payments ... demonstrates a concern for the debtor's long term security which is absent from the statute." *Clark,* 711 F.2d 21, 23 (3d Cir.1983). The *Cilek* court rejected the *Clark* court's reasoning:

> Unlike the [*Clark* court], this Court finds ample concern for the Debtor's long term security in the statute, the legislative history and the decisions of other courts. Both the subject of the statute (i.e., stock bonuses, pensions, profit-sharing plans and annuities) and the purpose of the statute (i.e., exemptions for the basic necessities) look to the future. Even the legislative history speaks of the future when it states: "Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor." Other courts have also found that Congress intended to look to the debtor's future needs as well as the debtor's current needs.

*Cilek,* 115 B.R. at 978 (citations and footnotes omitted).

Similarly, the Fifth Circuit in *Carmichael* distinguished

> between a debtor's right to receive a payment presently ... and a debtor's "right to receive ... a payment" (the plain words of the section) which includes both (1) a debtor's presently vested right to receive a payment in the future and (2) a debtor's right to receive a payment "presently," "currently," or "immediately."

*Carmichael,* 100 F.3d at 379. The *Carmichael* court declined to read into the Code

> a restriction to the right to receive payments presently, to the exclusion of a present right to receive payments in the future. The language of the section does not include words like "presently," "currently," or "immediately." Indeed, to infer such would be to exclude from consideration all deferred compensation and retirement accounts that have not yet ripened to current payment status. Again, that which is exempt is the right to receive payments, whether future or present, not merely the current receipt of payments.

*Id.* at 379–80.

*Does the debtor's control of an IRA make it non-exempt?*

The *Innis* court listed as one of its reasons for finding an IRA non-exemptible: "The depositor/debtor has complete control over the account, rendering no guarantee that the funds will actually be retained until retirement or disability." *Innis,* 62 B.R. at 660 (quoting *Peeler,* 37 B.R. at 518). The Fifth Circuit "reject[ed] out of hand the ... argument that the absence of an anti-alienation provision in the IRA destroys its exemptibility.... That the debtor has control over the IRA, penalty notwithstanding, does not destroy its exemptibility."[12] *Carmichael,* 100 F.3d at 378.

According to the *Carmichael* court:

---

10. The Iowa statute provided an exemption for "the debtor's rights in ... [a] payment under a pension, annuity or similar plan or contract on account of illness, disability, death, age, or length of service." *In re Huebner,* 986 F.2d 1222, 1224 (8th Cir.) (quoting Iowa Code § 627.6(8)(e)), *cert denied,* 510 U.S. 900, 114 S.Ct. 272, 126 L.Ed.2d 223 (1993).

11. The *Huebner* court indicated that the statutory language ("rights in" a payment) limited a debtor's exemption rights more than the federal exemption language ("right to receive" a payment). *See Huebner,* 986 F.2d at 1224, n. 5.

12. Control has been an important factor in many cases on this subject. *See Cilek,* 115 B.R. at 987 ("a claimed exemption for an IRA shall not be denied because the debtor controls the IRA"). *See also In re Howerton,* 21 B.R. 621, 623 (Bankr.N.D.Tex.1982) (noting that debtors exercise a great deal of control over their IRAs: "They may withdraw the cash value of the annuity ... at any time and there is no guarantee the funds will be retained until retirement."); *In re Worthington,* 28 B.R. 736, 739 (Bankr.W.D.Ky. 1983) ("Debtor control over [IRA] assets is not the determinant of whether exempt status exists.").

Control is a concept applicable to the determination of whether an asset belongs to the estate, a determination that is made before the question of exemption is ever reached. Once the asset is included in the estate, the concept of control evanesces; control is simply irrelevant to the question of exemption. Indeed, other exempt assets, such as personal residences, remain in the debtor's control following a discharge.

*Id.*[13] The court reached this determination on "the plain language of the subject section":

[T]he right to receive a payment under a "similar plan or contract" must be "on account of illness, disability, death, age, or length of service." Yet nowhere do the words "only" or "solely" appear. None dispute that the list is exclusive and mandatory in that (1) the right to receive payment under a "similar plan or contract" must be triggered by at least one of the five events, and (2) the right to receive the payment cannot be either totally unfettered or not triggered by *inter alia* one of the five listed events.

*Id.* at 379. (footnote omitted). According to the court, "the debtor's right to receive a payment from the IRA is statutorily triggered by his attaining age 59½ years;" thus, the IRA satisfies the basic test above. *Id.*

The *Carmichael* court rejected the argument that the debtor's ability to receive the funds of her own will destroys exemptibility:

As long as the right to receive a payment under a plan or contract can be triggered by one or more of the five listed events, and is therefore exemptible, the fact that payments can also be triggered by some additional factor—or absence of some additional factor—cannot destroy exemptibility.

*Id.* See also *In re Conner*, 73 F.3d 258, 260 (9th Cir.) (finding that for purposes of determining whether an ERISA-qualified plan account may be exempt under 541(c)(2) "[t]he Supreme Court appears to have discounted any distinction based on the debtors' control of their assets") (citing *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992)), *cert denied*, —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996).

The court also concluded that "the rule of ejusdem generis requires inclusion of IRAs in the phrase 'similar plan or contract' by general (if not perfect) analogy to the four specified plans or contracts that are per se exemptible, with or without an anti-alienation requirement." *Carmichael*, 100 F.3d at 379. According to the court, profitsharing plans, one of the four listed types of plans, "contain provisions that entitle participants to receive payments on account of one or more of the five listed triggering events, but also permit participants to withdraw up to the entire amount upon payment of a penalty." *Id.*

*Does the source of the funds destroy the exemption of IRAs?*

The *Innis* court denied the exemption of the debtor's IRA in part because "the debtor deals directly with the depository institution rather than having the fund[s] provided by an employer or other third party." *Innis*, 62 B.R. at 660 (quoting *In re Peeler*, 37 B.R. at 518). This distinction is not, however, universally accepted. For instance, in *In re Hunsucker*, 106 B.R. 220 (Bankr.D.Mont. 1988), the bankruptcy court rejected the trustee's argument that an annuity should not be exempted under section 522(d)(10)(E) because the "settlor made all contributions to the 'trust' res." *Hunsucker*, 106 B.R. at 221. In fact one can establish an annuity within an IRA. *See generally* Treas. Reg. 1.408–3. Because such an annuity would qualify under section 408, it would appear to qualify under the exemption statute at issue.

---

**13.** The *Cilek* court reached a similar conclusion:

To argue that an asset is not exempt because the debtor controls the claimed exemption implies the premise that all assets controlled by the debtor are not exempt. Neither the language of the Bankruptcy Code nor the legislative history supports such twisted reasoning. Such reasoning renders 11 U.S.C. § 522(d) meaningless because debtors usually own and control those assets which they claim as exemptions....

Those courts which distinguish IRAs from other retirement plans because of the debtor's control over the IRA mistakenly apply a concept helpful in determining the property of the estate under the Act to the unrelated determination of exemptions under the Code.

*Cilek*, 115 B.R. at 974.

## CONCLUSION

We are persuaded by the Fifth Circuit's reasoning in *Carmichael* and by the other cases cited above that a debtor should be allowed to exempt an IRA. By the terms of the statute, the debtors may exempt an IRA to the extent that it is reasonably necessary for support. Because the trial court denied the exemption as a matter of law, it did not determine whether the IRA (which is worth approximately $47,000) is necessary for the debtors' support. We therefore REVERSE and REMAND to allow the trial judge to make that factual determination.