**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY BEEMAN AND PHARMACY
SERVICES, INC., dba Beeman's
Pharmacy; CHARLES MILLER, dba
Medicine Shoppe; ANTHONY
HUTCHINSON AND ROCIDA, INC., dba
Finley's Rexall Drug; JIM
MORISOLI AND AMERICAN SURGICAL
PHARMACY, INC., dba American
Surgical Pharmacy; BILL
PEARSON AND PEARSON AND HOUSE,
on behalf of themselves and all
others similarly situated and on
behalf of the general public, dba
Pearson's Medical Group
Pharmacy,
        *Plaintiffs-Appellants,*

v.

TDI MANAGED CARE SERVICES,
INC., dba Eckerd Health Services;
MEDCO HEALTH SOLUTIONS, INC.;
EXPRESS SCRIPTS, INC.; ADVANCE
PCS,
        *Defendants-Appellees.*

No. 04-56369

D.C. No.
CV-02-01327-VAP

ANTHONY HUTCHINSON, AND
ROCIDA, INC., dba FINLEY'S REXALL
DRUG; CHARLES MILLER, dba
YUCAIPA VALLEY PHARMACY; JIM
MORISOLI, AND AMERICAN SURGICAL
PHARMACY, INC., dba AMERICAN
SURGICAL PHARMACY; BILL
PEARSON, AND PEARSON AND HOUSE,
dba PEARSON'S MEDICAL GROUP
PHARMACY, on behalf of
themselves and all others similarly
situated and on behalf of the
general public; JERRY BEEMAN, AND
PHARMACY SERVICES, INC., dba
BEEMAN'S PHARMACY,
                  *Plaintiffs-Appellants,*

                      v.

ANTHEM PRESCRIPTION
MANAGEMENT, INC.; ARGUS HEALTH
SYSTEMS, INC.; BENESCRIPT
SERVICES, INC.; FFI RX MANAGED
CARE; FIRST HEALTH SERVICES
CORPORATION, dba VIRGINIA FIRST
HEALTH SERVICES CORP.; MANAGED
PHARMACY BENEFITS, INC.; MEDE
AMERICA CORP.; NATIONAL MEDICAL
HEALTH CARD SYSTEMS, INC.;
PHARMACARE MANAGEMENT
SERVICES, INC.; PRIME
THERAPEUTICS; RESTAT
CORPORATION; RX SOLUTIONS, INC.;
TMESYS, INC.; WHP HEALTH
INITIATIVES, INC.,
                  *Defendants-Appellees.*

No. 04-56384

D.C. No.
CV-04-00407-VAP

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
April 3, 2006—Pasadena, California

Filed June 2, 2006

Before: Mary M. Schroeder, Chief Judge, Myron H. Bright,*
and Harry Pregerson, Circuit Judges.

Opinion by Judge Bright

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

**COUNSEL**

Michael A. Bowse and Allan Browne, Beverly Hills, California, Alan M. Mansfield, John W. Hanson, and Hallen D. Rosner, San Diego, California, for the appellants.

Thomas N. Makris and Andrea L. Courtney, Sacramento, California, Brian D. Martin, San Diego, California, for the appellees.

---

## OPINION

BRIGHT, Circuit Judge:

Plaintiffs-Appellants Pharmacies brought suit against Defendants-Appellees Pharmacy Benefit Managers ("PBMs") based on violations of California Civil Code §§ 2527 and 2528. The district court dismissed the Pharmacies' claims due to lack of "injury in fact" sufficient to confer Article III standing. We reverse and remand.

I

This case involves the relationship between PBMs (referred to in California Civil Code §§ 2527 and 2528 as "Prescription Drug Claims Processors"), pharmacies, and third-party payors (for example, health insurance companies, self-insured employer groups, and union health and welfare plans). A customer goes to a pharmacy with a prescription and presents both an insurance card and a co-pay to get the prescription. The pharmacy fills the prescription from inventory. The pharmacy then submits a claim to a PBM for reimbursement. The pharmacy usually has a contractual relationship with various PBMs to assist in performing claims processing services. A PBM coordinates certain aspects of the reimbursement relationship between pharmacies and third-party payors. The PBM processes the pharmacy's claim for reimbursement and pays the pharmacy reimbursements in the amount it unilaterally sets. The PBM, which handles claims for several third-party payors, then submits the claim to the payor and gets paid.

In 1981, the California Pharmacists Association introduced a bill which would require PBM reimbursements at customary charges made by pharmacies rather than the rates unilaterally set by PBMs. However, the bill that passed merely required PBMs to conduct or obtain the results of bi-annual studies of a statistically significant sample of California pharmacies' retail drug pricing for pharmaceutical dispensing services to private uninsured customers, and supply copies of those studies to "clients" on whose behalf the PBMs perform studies. *See* Cal. Civ. Code § 2527(c), (d).

The Pharmacies sought to enforce California Civil Code sections 2527 and 2528 by bringing an action against the PBMs. The PBMs sought to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) by arguing the Pharmacies lack Article III standing. The District Court granted the motion to dismiss. This appeal followed.

## II

Standing issues are reviewed de novo. *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 487-88 (9th Cir. 1996). The district court's interpretation of a statute is a question of law also subject to de novo review. *Id.* at 488. This court may affirm the district court's judgment on any ground supported by the record. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003).

## III

[1] The Pharmacies claim, among other things, they have suffered procedural injury sufficient to give them Article III standing. "To satisfy the injury in fact requirement, a plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Citizens for Better Forestry v. USDA*, 341 F.3d 961, 969 (9th Cir. 2003) (citations omitted). "Furthermore, he or she 'needs [to]

establish 'the reasonable probability of the challenged action's threat to [his or her] concrete interest.' " *Id.* (citation omitted) (alteration in original).

**[2]** California Civil Code section 2527(c) requires prescription drug claims processors to conduct or obtain the results of a study or studies identifying the fees, separate from ingredient costs, of all, or of a statistically significant sample, of California pharmacies, for pharmaceutical dispensing services to private consumers.[1] Section 2527(d) provides in part: "[t]he study report or reports obtained pursuant to subdivision (c) shall be transmitted by certified mail by each prescription drug claims processor to the chief executive officer or designee, of each client for whom it performs claims processing services . . . . no less often than every 24 months." Section 2528 reads in part:

A violation of Section 2527 may result only in impo-

---

[1]Section 2527(c) reads in full:

(c) On or before January 1, 1984, every prescription drug claims processor shall have conducted or obtained the results of a study or studies which identifies the fees, separate from ingredient costs, of all, or of a statistically significant sample, of California pharmacies, for pharmaceutical dispensing services to private consumers. The study or studies shall meet reasonable professional standards of the statistical profession. The determination of the pharmacy's fee made for purposes of the study or studies shall be computed by reviewing a sample of the pharmacy's usual charges for a random or other representative sample of commonly prescribed drug products, subtracting the average wholesale price of drug ingredients, and averaging the resulting fees by dividing the aggregate of the fees by the number of prescriptions reviewed. A study report shall include a preface, an explanatory summary of the results and findings including a comparison of the fees of California pharmacies by setting forth the mean fee and standard deviation, the range of fees and fee percentiles (10th, 20th, 30th, 40th, 50th, 60th, 70th, 80th, 90th). This study or these studies shall be conducted or obtained no less often than every 24 months.

> sition of a civil remedy . . . . Any owner of a licensed California pharmacy shall have standing to bring an action seeking a civil remedy pursuant to this section so long as his or her pharmacy has a contractual relationship with, or renders pharmaceutical services to, a beneficiary of a client of the prescription drug claims processor, against whom the action is brought . . . .

Thus, sections 2527 and 2528 are intended to give the Pharmacies the ability to enforce PBMs' obligations to provide certain studies to PBM third-party payor clients.

[3] Plaintiffs make out a procedural injury: the failure on the part of the PBMs to follow the statutory procedures requiring they conduct studies and provide them to third parties. *Cf. Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1514 (9th Cir. 1992) ("[B]ecause 'NEPA is essentially a procedural statute designed to ensure that environmental issues are given proper consideration in the decisionmaking process,' injury alleged to have occurred as a result of violating this procedural right confers standing." (citations omitted)).

[4] The Pharmacies must still, however, show the procedures are designed to protect some threatened concrete interest. *See Mumma*, 956 F.2d at 1514 ("The personal injury requirement will be met only if the alleged harm is 'distinct and palpable . . . and not abstract or conjectural or hypothetical.' " (citation omitted)).

The Pharmacies argue California Civil Code sections 2527 and 2528 require the PBMs to make studies available to third-party payors. These studies would reflect the true market rate of return for pharmacy prescriptions. Thus, the Pharmacies claim the Legislature intended that by supplying those involved in the transactions with accurate information regarding free market pricing for the drugs, the market and third-

party payors could make informed decisions about fair reimbursement rates to be paid or received for the provision of pharmaceuticals to plan participants — as compared to the rates PBMs were currently imposing on pharmacies. The Pharmacies assert recipients of the studies could use this information to evaluate what should be actual market prices, negotiate fairer reimbursement rates, lobby for legislative intervention should that be necessary, and ascertain payments made to PBMs against those amounts the PBMs pass on to pharmacies.

The PBMs respond that the use of the information in this manner, to the benefit of the Pharmacies, is too remote to create standing: should the third-party payors actually receive the studies, there exists no requirement they use them in the event that they even read them.

[5] When the legislature "is the source of the purportedly violated legal obligation, we look to the statute to define the injury." *Mumma*, 956 F.2d at 1514 (citation omitted). The Legislature here intended that making these studies publicly available would presumably at least "require claims processors to present objective data on the range and percentiles of usual and customary charges of pharmacists in the hope that at a time in the future this information will become the basis for reimbursement." Staff Comment to the report of the Assembly Committee on Finance, Insurance, and Commerce (cited in *ARP Pharm. Serv., Inc. v. Gallagher Bassett Serv., Inc.*, 135 Cal. App. 4th 841, 850 (Cal. Ct. App. 2006) (vacated and request for rehearing granted)). As the Department of Insurance noted in the Enrolled Bill Report, even if "the bill is fairly innocuous in its impact . . . it may help identify areas for cost-containment in the future." The concrete injury, as the Pharmacies allege, is a lack of information, the denial of which then adversely affects the possibility such information will improve reimbursement rates at some point in the future.

**[6]** Short of assuming the legislature passed a bill with useless procedural provisions, we must conclude such procedures play some, if not a critical, part in future third-party payor decisions. *See Mumma*, 956 F.2d at 1514. The procedural injury here threatens a concrete interest of the Pharmacies and is thus sufficient to create "injury in fact" for Article III standing purposes.

**[7]** Nonetheless, the PBMs continue, the Pharmacies must still show causation and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). They argue the Pharmacies cannot allege facts leading to a reasonable inference that "but for" the PBMs' alleged failure to provide adequate fee studies, the Pharmacies would have received increased payments. However, as the Pharmacies correctly note, the relevant question is not the ultimate outcome that would result from the properly followed procedures, but rather whether the failure to conduct and disseminate the studies is the "but for" cause of the procedural injury. *Cf. Mumma*, 956 F.3d at 1517-18 ("The asserted injury is that environmental consequences might be overlooked and reasonable alternatives ignored as a result of deficiencies in the final EIS and ROD. The ultimate outcome following proper procedures is not in question.").

**[8]** Regarding redressability, the PBMs argue the Pharmacies cannot allege facts creating a reasonable inference that the failure to provide surveys caused an identifiable injury to any pharmacy, and thus neither statutory damages nor any other remedy sought can be fairly seen as providing redress. This argument, however, merely restates the PBMs' claim that there exists no "injury in fact." The procedural injury would be redressed if the PBMs followed proper procedures.

Finally, the PBMs argue the district court should be affirmed on the alternative basis that California Civil Code sections 2527 and 2528 violate the First Amendment of the United States Constitution. While this court can affirm on any legal basis finding support in the record, *Atel Fin. Corp.*, 321

F.3d at 925, we decline to address this issue here when it was not argued in the district court below. We observe that the parties will have an opportunity to fully address such argument on remand.

REVERSED AND REMANDED.