UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LIND-WALDOCK & COMPANY, an
Illinois corporation,
            *Plaintiff-Appellant,*

v.                                                          No. 00-1114

CATHERINE P. MOREHEAD; RAYMOND
A. MOREHEAD,
            *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-98-125-1, BK-97-1103, BK-97-11497)

Argued: November 1, 2000

Decided: January 3, 2001

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Henry Buswell Roberts, Jr., NATHAN & ROBERTS,
Toledo, Ohio, for Appellant. Thomas Herbert Fluharty, Clarksburg,
West Virginia, for Appellees. **ON BRIEF:** W. David Arnold,
NATHAN & ROBERTS, Toledo, Ohio; Evans L. King, Jr., Donald
Epperly, STEPTOE & JOHNSON, Clarksburg, West Virginia, for
Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Lind-Waldock & Company brought an adversary proceeding against Chapter 7 debtors Raymond and Catherine Morehead, seeking to declare a margin debt nondischargeable under the fraud exceptions to discharge found in 11 U.S.C. §§ 523(a)(2)(A) & (C). After a bench trial the bankruptcy court dismissed Lind-Waldock's § 523(a)(2)(A) claim on the grounds that the company did not establish the existence of a representation known to be false when made, an intent to defraud, or justifiable reliance. In addition, the court dismissed the § 523(a)(2)(C) claim because it concluded that the margin debt was not a "consumer debt." The district court affirmed. We affirm as to § 523(a)(2)(A) because the bankruptcy court was not clearly erroneous in finding that the Moreheads did not intend to defraud Lind-Waldock. We also affirm as to § 523(a)(2)(C) because the debt is not a "consumer debt."

I.

Raymond Morehead first opened a trading account with Lind-Waldock, a futures clearing merchant, in 1989. Raymond used the account to speculate in the financial futures market by buying and selling S&P 500 contracts. An S&P 500 contract is an agreement to buy or to sell the value of the S&P 500 index at an agreed price at a future settlement date. Speculating in the futures market carries high risk.

Raymond opened his account with a deposit of $50,000. Thereafter, he lost between $50,000 and $100,000 and closed the account in 1991. In 1995 Raymond's wife, Catherine, opened a new account with Lind-Waldock. Catherine opened the account in her name for estate tax purposes, and Raymond managed the account. In opening the new account, the Moreheads completed an account application.

They stated truthfully on the application that their net worth exclusive of equity in their home was "more than $1,000,000." The application also provided that the Moreheads were to inform Lind-Waldock of any changes to the information provided.

The Moreheads opened the 1995 account with a $370,000 deposit. Within a year Raymond had lost the entire $370,000, and the account balance was zero. Nevertheless, Raymond kept the account open, but he did not trade. In February 1997 Raymond obtained an unsecured $50,000 bank loan, which he deposited into the account. By the time of this deposit, the Moreheads' net worth was significantly less than $1,000,000. Indeed, excluding the equity in their home, the Moreheads had only $20,000 in assets. The Moreheads never informed Lind-Waldock about the drastic reduction in their net worth, and Lind-Waldock never inquired about the Moreheads' financial status.

On April 10, 1997, Raymond began trading with the $50,000, and he made substantial gains. His gains were swift in the short run, and by April 29 his liquidation position was over $470,000. Raymond then began to sustain big losses. Within a two-day period he lost almost $100,000, and on the third day he lost over $230,000. By May 7 his position dropped to $51,000. On May 8 he recovered somewhat, gaining over $100,000. But on May 9 the roof caved in: Raymond lost $479,000, and Lind-Waldock made a margin call to the Moreheads in the amount of $850,000. Raymond immediately agreed to wire the money and later in the day claimed that he had wired it. In fact, Raymond had not wired the money because the Moreheads could not cover the call. The account ended up with a negative balance of approximately $321,000.

The Moreheads promptly filed for Chapter 7 bankruptcy. Lind-Waldock filed an adversary proceeding against the Moreheads, seeking to have the bankruptcy court declare the $321,000 debt nondischargeable. Lind-Waldock argued that the debt was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) & (C). After a bench trial the bankruptcy court dismissed the complaint, concluding (1) that as to § 523(a)(2)(A) there was no representation known to be false when made, no justifiable reliance, and no intent to defraud and (2) that as to § 523(a)(2)(C) the debt was not a "consumer debt." The district court affirmed, and Lind-Waldock appeals.

## II.

In bankruptcy cases we review de novo the decision of the district court, "effectively standing in its place to review directly the findings of fact and conclusions of law made by the bankruptcy court." *Butler v. David Shaw, Inc.*, 72 F.3d 437, 440 (4th Cir. 1996). We may not set aside findings of fact unless they are "clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. The creditor bears the burden of proving that a debt is nondischargeable by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991).

## A.

Section 523(a)(2)(A) provides that a debt is nondischargeable if it arose from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." A creditor must establish five elements under this section: (1) that the debtor made a representation; (2) that at the time the representation was made, the debtor knew it was false; (3) that the debtor made the false representation with the intention of defrauding the creditor; (4) that the creditor justifiably relied upon the representation; and (5) that the creditor was damaged as the proximate result of the false representation. *See Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999); *MBNA Am. v. Simos (In re Simos)*, 120 B.R. 188, 191 (Bankr. M.D.N.C. 1997).

In reviewing the bankruptcy court's dismissal of Lind-Waldock's § 523(a)(2)(A) claim, we look first at the court's finding that the Moreheads did not intend to defraud Lind-Waldock. As we have already indicated, we review this finding under the clearly erroneous standard. *See Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996); *cf. Ford v. Poston (In re Ford)*, 773 F.2d 52, 55 (4th Cir. 1985) (holding that clearly erroneous standard applies to whether there was fraudulent intent under the Bankruptcy Code's fraudulent transfer provision). In determining whether a debtor possessed fraudulent intent, the question is whether the debtor subjectively intended to defraud the creditor. *See Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th

Cir. 1998), *cert. denied*, 525 U.S. 978 (1998); *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090 (9th Cir. 1996); *see also Field v. Mans*, 516 U.S. 59, 69 (1995) (concluding that elements of § 523(a)(2) incorporate the general common law of torts). A debtor subjectively intends to defraud a creditor when he in bad faith incurs a debt with the knowledge that the debt is unlikely to be repaid. *See Rembert*, 141 F.3d at 281. A debtor does not subjectively intend to defraud a creditor simply because he should know that he lacks the ability to repay a debt when it is incurred. *See id.* While the debtor's inability to repay a debt when it is incurred may be a factor in proving subjective intent, "the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith." *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1286 (9th Cir. 1996).

Lind-Waldock argues that the Moreheads intended to commit fraud by trading when they knew that their net worth was insufficient to cover their position. The bankruptcy court disagreed. At trial Raymond repeatedly testified that he never considered the prospect that his account balance might drop below zero. He stated that he never had a negative balance before and that he "felt like [he] had a pretty good idea where the market was going." The bankruptcy court credited Raymond's testimony, and we must give that court deference because it had the "unique ability" to assess his credibility. *Biondo*, 180 F.3d at 134. There was evidence in addition to Raymond's testimony that supports the bankruptcy court's finding that the Moreheads did not intend to commit fraud. Specifically, the time period between when the Moreheads had a positive account balance and when they went under with the $321,000 deficit was extremely short — a matter of hours. At the close of the market on May 8 the Moreheads' account had a liquidation value of over $158,000. By 10:00 a.m. the next day the liquidation value was negative $321,000. The very short time that the Moreheads had to consider how to handle the growing deficit is evidence that the Moreheads did not formulate an intent to defraud Lind-Waldock. This is a close case to be sure, but we must conclude that the bankruptcy court was not clearly erroneous in finding that the Moreheads did not intend to defraud Lind-Waldock. Because Lind-Waldock did not prove intent to defraud as required under § 523(a)(2)(a), we can affirm the dismissal on that basis alone. As a

result, we need not consider the bankruptcy court's determinations with respect to other elements of the § 523(a)(2)(A) claim.*

## B.

Section § 523(a)(2)(C) provides that "consumer debts . . . for luxury goods or services" incurred within 60 days of filing for bankruptcy are presumed to have been obtained through fraud. Lind-Waldock argues that this section applies to the Moreheads' debt. It does not. A consumer debt is one incurred "by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). A debt incurred with a profit motive is not incurred "primarily for a personal, family, or household purpose" and therefore is not a consumer debt. *See Runski v. Cypher Chiropractic Ctr. (In re Runski)*, 102 F.3d 744, 747 (4th Cir. 1996) ("[C]ourts have concluded uniformly that debt incurred for a business venture or with a profit motive does not fall into the category of debt incurred for 'personal, family, or household purposes.'"). The Moreheads incurred the debt while speculating in the futures market. The debt is therefore not a consumer debt. *See Burns v. Citizens Nat'l Bank (In re Burns)*, 894 F.2d 361, 363 (10th Cir. 1990) (holding that a loan to invest in the stock market is not a consumer debt).

## III.

In conclusion, we affirm as to § 523(a)(2)(A) because the bankruptcy court was not clearly erroneous in concluding that the Moreheads did not intend to defraud Lind-Waldock. Moreover, we affirm as to § 523(a)(2)(C) because the debt is not a consumer debt. The judgment is affirmed.

*AFFIRMED*

---

*Lind-Waldock also argues that the Moreheads intended to commit fraud when Raymond lied about wiring the money in response to the margin call. However, Lind-Waldock does not challenge the bankruptcy court's conclusion that it suffered no additional damage after Raymond lied. Therefore, even if the lie constituted fraud, Lind-Waldock could not recover.