Martin P. SHEEHAN, Trustee for the Bankruptcy Estate of Catherine P. Morehead and Raymond Morehead, Appellant,

v.

LINCOLN NATIONAL LIFE and Raymond A. Morehead, Appellees,

and

Martin P. Sheehan, Trustee for the Bankruptcy Estate of Catherine P. Morehead and Raymond Morehead, Appellant,

v.

Catherine P. Morehead and Raymond A. Morehead, Appellees.

Civ.A. Nos. 1:99CV19, 1:99CV20.

United States District Court, N.D. West Virginia.

Jan. 5, 2001.

Martin P. Sheehan, Sheehan & Nugent, Wheeling, WV, trustee.

Thomas H. Fluharty, Clarksburg, WV, for Catherine P. Morehead and Raymond A. Morehead.

Samuel H. Foreman, Weber, Goldstein, Greenberg & Gallagher, LLP, Pittsburgh, PA, for Lincoln National Life Insurance Co.

### *MEMORANDUM AND OPINION ORDER*

KEELEY, District Judge.

## I. *PROCEDURAL BACKGROUND*

On June 4, 1997, Catherine Morehead filed a Chapter 7 Bankruptcy Petition on

behalf of herself and her husband, Raymond Morehead, in the United States Bankruptcy Court for the Northern District of West Virginia. Three separate appeals stemming from this bankruptcy proceeding have been filed with this Court. On December 20, 1999, this Court affirmed the bankruptcy court's rulings in the appeal filed by the Moreheads' creditor Lind–Waldock. *See Lind–Waldock v. Morehead,* Civil Action No. 1:98CV125. Lind–Waldock appealed this Court's order to the Fourth Circuit Court of Appeals. On January 3, 2001, in an unpublished decision, the Fourth Circuit affirmed this Court's judgment, finding that the Moreheads did not intend to defraud Lind–Waldock and that their debt to Lind–Waldock did not constitute a consumer debt. *Lind–Waldock & Company v. Catherine P. Morehead, et al.,* 2001 WL 7516 (4th Cir.2001).

The Court has before it the two remaining appeals filed by Martin Sheehan, the Trustee of the Moreheads' bankruptcy estate. In Civil Action No. 1:99CV19, the Trustee appeals the bankruptcy court's dismissal of his adversary proceeding against Dr. Morehead and Lincoln National Life. In Civil Action No. 1:99CV20, the Trustee appeals from the bankruptcy court's Memorandum Opinion and Order issued in the underlying bankruptcy case (Bk. No. 97–11497). The Trustee has submitted a combined appellate brief for both appeals. For the sake of consistency, the Court addresses both appeals through this single Order.

## II. *LEGAL ISSUES*

The Trustee sets forth the following four grounds as the basis for his appeals:

(1) Did the bankruptcy court err in denying the Trustee's objection to the exemptions?

(2) Did the bankruptcy court err in finding that the $10,000 per month received by Dr. Morehead, pursuant to his private disability policy with Lincoln National Life, fell within the purview of West Virginia Code § 38–10–4(j)(3) rather than West Virginia Code § 38–10–4(j)(5)?

(3) Did the bankruptcy court err in finding that the entirety of the disability payments received by Dr. Morehead each month is exempt?

(4) Did the bankruptcy court err in dismissing the immediate adversary proceeding in light of its ruling on the Trustee's objection to exemptions?

These issues may be summarized as (1) whether the bankruptcy court correctly concluded that the debtors did not intentionally fail to list an estate asset? And, if so, (2) whether the debtors' right to receive payment under a private disability policy is fully exempt from their bankruptcy estate, or is only partially exempt to the extent that it is reasonably necessary for their support?

While the bankruptcy court did not err in its findings that the debtors did not intentionally conceal an asset, the Court concludes that the payments received by Dr. Morehead under the Lincoln National disability policy are exempt only to the extent reasonably necessary for the support of the debtors and their dependents, pursuant to West Virginia Code § 38–10–4(j)(5). Accordingly, the judgment of the bankruptcy court is **AFFIRMED IN PART, REVERSED IN PART** and **REMANDED** for further proceedings consistent with this Order.

## III. *FACTUAL BACKGROUND*

On May 9, 1997, Dr. Morehead received a telephone call early in the morning from Robert Waldock of Lind–Waldock, a futures brokerage through whom he traded in the commodities markets, advising him that the market had moved against his open positions over night and that Lind–Waldock was making an $800,000 margin call. Unable to meet the margin call, Dr. Morehead's open positions were liquidated, resulting in a $321,038 deficit in his Lind–

Waldock trading account. On that same day Dr. Morehead was terminated from his position as a practicing surgeon at the Veterans' Administration Hospital in Clarksburg, West Virginia.

Dr. Morehead subsequently underwent treatment for chemical dependency in Atlanta, Georgia. While he was in Atlanta, his wife filed a Chapter 7 voluntary bankruptcy petition on behalf of herself and her husband, on June 4, 1997. A meeting of creditors was held and the Trustee filed his report.

Several months later, the Trustee was advised by Lind–Waldock that the debtors had failed to disclose a disability policy to the Trustee. Dr. Morehead had acquired the disability income insurance policy in 1986 from the Lincoln National Life Insurance Company ["Lincoln National"]. The policy provided for monthly benefits of $10,000 per month, with a cost of living benefit rider. Lincoln National refused to turn over the policy payments to the Trustee and so, on February 10, 1998, the Trustee successfully moved the bankruptcy court to re-open the bankruptcy case.[1]

In addition to re-opening the bankruptcy case, the Trustee filed an adversary proceeding (Docket No. 98–1031) against Lincoln National and Dr. Morehead, seeking a court order compelling Lincoln National to turn over future payments to him and to compel Dr. Morehead to turn over the approximately $56,000 he had already received from Lincoln National. On April 16, 1998, the bankruptcy court issued an order combining both the Trustee's objections to the exemptions in the underlying bankruptcy case (Docket No. 97–11497) with the adversary proceeding (Docket No. 98–1031). The court subsequently issued an order directing Lincoln National to continue making payments under the disability policy to Dr. Morehead.

On December 8, 1998, the bankruptcy court dismissed the adversary proceeding as moot and referred the parties to a concomitant memorandum opinion and order denying the Trustee's objections to the debtors' exemptions. The bankruptcy court concluded that the debtors had not fraudulently concealed the disability policy and that the policy's monthly payments were wholly exempt from the bankruptcy estate, under West Virginia Code § 38–10–4(j)(3). Consequently, the Trustee filed these two appeals, using the same brief for each.

After carefully reviewing the record regarding the issues raised in the joint appeals, this Court remanded the case back to the bankruptcy court for further findings of fact as to whether the debtors fraudulently concealed the existence of the Lincoln National disability policy from the Trustee. The bankruptcy court held a hearing on October 17, 2000 and heard testimony from Dr. Morehead and his wife, Catherine. On October 20, 2000, the court issued an order finding no fraudulent concealment. This joint appeal is now ripe for the Court's review and ruling.

## IV.  DISCUSSION

■ The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The bankruptcy court's application of the law is reviewed de novo and its findings of fact may not be set aside unless clearly erroneous. *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir.1999).

### A.  Fraudulent Concealment.

The Trustee contends that the debtors fraudulently concealed their asset of the Lincoln National disability policy from the bankruptcy estate. It is undisputed that the debtors did not disclose the policy on their bankruptcy schedules and statements for several months. When the debtors did amend their schedules, they listed the policy as an asset on Schedule B and simultaneously sought to exempt it on Schedule C. The debtors, in their submissions to the

1. No. 97–11497.

bankruptcy court, claimed that the policy was disclosed in the adversary proceeding to Lind–Waldock and that the disability policy was inadvertently omitted from the listing of their assets rather than intentionally concealed.

In finding that the debtors had not fraudulently concealed the policy, the bankruptcy court stated, in its December 8, 1998 Memorandum Opinion and Order, that "[t]he intricacies of § 541 of the Bankruptcy Code are not well known to debtors." The Court also noted that it was possible that the debtors did not consider the monthly disability payments to be assets. On appeal, the Trustee argued that the bankruptcy court erred in concluding that the debtors had not fraudulently concealed an asset.

This Court remanded the matter to the bankruptcy court for an evidentiary hearing and further findings of fact on whether the debtors had fraudulently concealed Dr. Morehead's disability policy. Accordingly, on October 17, 2000, the bankruptcy court held an evidentiary hearing on this issue, at the conclusion of which it stated its findings of facts upon the record. It then issued a written order, on October 20, 2000, concluding that the debtors did not fraudulently conceal the Lincoln National Life policy.

█ A debtor may not claim as exempt property which he knowingly concealed and failed to disclose to the trustee, even if the property would have been exempt had it been property scheduled and claimed. *In re Dorricott*, 5 B.R. 192 (Bankr.N.D.Ohio 1980) (discussing 11 U.S.C. § 522(g)(1)). Fraudulent concealment of an asset may result in forfeiture of a debtor's right to exempt the asset from the bankruptcy estate. *See generally In re Yonikus*, 996 F.2d 866 (7th Cir.1993).

> The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive. The

omission of assets may be a good reason to deny or revoke a discharge.

*Yonikus,* 996 F.2d at 872, *citing Payne v. Wood,* 775 F.2d 202, 205 (7th Cir.1985). The issue of a debtor's intent is a question of fact or inference to be drawn by the bankruptcy court from the facts. *Yonikus,* 996 F.2d at 872. "Bad faith is generally determined from the totality of the circumstances." *In re Hardy,* 234 B.R. 94, 95 (Bankr.W.D.Mo.1999).

█ The Court has reviewed the transcript of the hearing held before the bankruptcy court on October 17, 2000, and finds that its findings of fact are not clearly erroneous. Accordingly, the Court **AFFIRMS** the bankruptcy court's finding that the debtors did not fraudulently conceal the Lincoln National disability policy from the Trustee.

### B.  *Nature of Disability Policy.*

The second, and more difficult, issue before the Court is whether the disability policy may be fully or only partially exempt from the bankruptcy estate. West Virginia has opted out of the exemptions listed in the federal Bankruptcy Code. W.Va.Code § 38–10–4 [1997]. *See generally Dominion Bank of the Cumberlands v. Nuckolls,* 780 F.2d 408, 414 (4th Cir. 1985) (noting that over seventy percent of states, including West Virginia, have enacted legislation choosing their own exemption schemes over the federal one).

Debtors domiciled in the State of West Virginia are not authorized to exempt the property specified under 11 U.S.C. § 522(d) but are limited to the exemptions set forth in West Virginia Code § 38–10–4:

> Any person who files a petition under the federal bankruptcy law may exempt from property of the estate in a bankruptcy proceeding the following property: . . .
>
> (j) The debtor's right to receive: . . .
>
> (3) A disability, illness or unemployment benefit; . . .

(5) A payment under a stock bonus, pension, profit sharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless:

(A) Such plan or contract was established under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;

(B) Such plan is on account of age or length and service; and

(C) Such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954.

W.Va.Code § 38–10–4 [1997].

The debtors argue that the disability policy is wholly exempt from the bankruptcy estate, pursuant to W.Va.Code § 38–10–4(j)(3), while the Trustee contends that the policy more appropriately falls under (j)(5) and is, therefore, exempt only to the extent reasonably necessary for support of the debtors and their dependents. There is no case law on point discussing the interplay between a disability benefit under (j)(3) of the West Virginia statute and a payment under a contract on account of disability under (j)(5).

Although West Virginia has opted out of the federal exemptions, the exemptions for disability payments set forth in West Virginia Code § 38–10–4(j)(3) and (j)(5), at the time that the Moreheads filed for bankruptcy, were virtually identical to those set forth in 11 U.S.C. § 522(d)(10)(C) and (10)(E), with the exception of the references to the Internal Revenue Code in sub-part (j)(5)(C). *See Harris v. Crowder*, 174 W.Va. 83, 322 S.E.2d 854, 858 (1984) ("This section, setting forth West Virginia's bankruptcy exemptions, mirrors the federal bankruptcy exemptions almost entirely.") West Virginia has since amended Section 38–10–4(j)(5), effective March 13, 1999, to add funds on deposit in an individual retirement account, including a simplified employee pension. W.Va.Code § 38–10–4 [1997, Supp.2000]. Given the similarity in the statutory language between the federal and state exemptions and the absence of case law interpreting the pertinent provisions of the West Virginia statute, the Court will consider case law from other jurisdictions discussing the interplay between 11 U.S.C. § 522(d)(10)(C) and (E).

In its December 12, 1998 order, the bankruptcy court recognized the difficulties courts have historically experienced in understanding the interplay between the federal exemptions, and quoted *In re Kleinman*, 172 B.R. 764, 776 (Bankr. S.D.N.Y.1994): "Parsing exemption claims concerning lost income disability payments is like hacking one's way through a thicket." This Court cannot disagree given the absence of pertinent case law on this issue.

Before the bankruptcy court, the Trustee contended that the proper exemption for the Lincoln National disability policy is sub-section (j)(5) because (j)(3) exemptions are limited to governmentally-provided benefits and do not include private insurance payments, such as at issue here. The debtors, on the other hand, argued that because Dr. Morehead obtained his policy independent of his employment, sub-section (j)(3) is the proper exemption provision.

The bankruptcy court took a different approach in ruling in favor of the debtors. It analogized the private disability policy at issue here to a workers' compensation award or other temporary contractual government or private employment benefit that would compensate an employee up to 60% for income lost due to a disability. Accordingly, the bankruptcy court found that the disability policy was wholly exempt, pursuant to W.Va.Code § 38–10–4(j)(3) and 11 U.S.C. § 522(d)(10)(C).

However, both of the cases cited by and relied upon by the bankruptcy court, *In re Buchholz*, 144 B.R. 443 (Bankr.N.D.Iowa 1992) and *In re Haynes*, 146 B.R. 779

(Bankr.S.D.Ill.1992), deal with monies received in settlement of personal injury actions and the interplay between 11 U.S.C. § 522(d)(10) and § 522(d)(11). *See also In re Chavis,* 207 B.R. 845 (Bankr.W.D.Pa. 1997) (finding proceeds of accidental death and dismemberment policy exempt under § 522(d)(11) but not § 522(d)(10)). Neither party in this matter is presently disputing that the Lincoln National disability policy gives Dr. Morehead a contractual right to receive benefits and does not involve compensation for losses resulting from a tort action. Both parties appear to agree that the policy, if subject to exemption, falls under either 11 U.S.C. § 522(d)(10)(C) or (E), or the West Virginia equivalent, *not* 11 U.S.C. § 522(d)(11).

Neither *Buchholz* nor *Haynes* discusses the difference between 11 U.S.C. § 522(d)(10)(C) or (E). However, in *Haynes,* the bankruptcy court cites to the legislative history behind all of the 11 U.S.C. § 522(d)(10) exemptions, which makes clear that Congress intended to exempt certain benefits that are akin to the future earnings of the debtor, such as disability benefits, in 11 U.S.C. § 522(d)(10). *Haynes,* 146 B.R. at 780, *citing* H.R. 595, 95th Cong., 1st Sess. 361–62 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6316–6318. Therefore, according to the legislative history, both § 522(d)(10)(C) and (E) would permit a debtor to exempt a lost income disability policy, which is intended to replace future lost wages, and this alone does not distinguish either exemption. *See also In re LaBelle,* 18 B.R. 169 (Bankr.D.Me.1982).

In *Buchholz,* the bankruptcy court discusses the meaning of the term "disability benefit," as used in 11 U.S.C. § 522(d)(10)(C), and cites definitions from various dictionaries. Each definition, including the one from Black's Law Dictionary, defines a "benefit" as financial assistance received in times of need, including disability, through either insurance or public assistance programs. *Buchholz,* 144 B.R. at 445. The use of the term "disabili-

ty benefit" in 11 U.S.C. § 522(d)(10)(C) and W.Va.Code § 38–10–4(j)(3) may also encompass payment under a privately purchased disability policy, as well as through a public assistance program, and the two exemptions are not distinguishable, therefore, on this ground alone.

A leading bankruptcy treatise distinguishes the two exemptions under 11 U.S.C. § 522(d)(10) as follows:

> [S]ub-section (d)(10)(C) exempts the debtor's right to receive "a disability, illness, or unemployment benefit." Temporary contractual benefits, most of which will arise from the debtor's employment are covered here ...

> Finally, sub-section (d)(10)(E) exempts "a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor...." These permanent employment benefits, unlike the temporary benefits covered by § 522(d)(10)(C), are limited by a reasonable need test.

2 Norton Bankr.L. & Prac.2d § 46:17 (1999 Supp.) In other words, (d)(10)(C) covers temporary contractual benefits while (d)(10)(E) covers more permanent employment-related benefits.

An examination of Dr. Morehead's policy (No. 15 6031839) shows that the maximum benefit period is to age 65 or for 24 months if total disability commences after age 63. "Total disability" is defined as meaning that, because of his injury or sickness, the insured can no longer do the main duties of his occupation, that he is under a physician's care, and that he is not engaged in any other gainful employment. The record before the Court does not indicate whether Dr. Morehead is still totally disabled, as that term is defined in his policy, or for how long he expects to remain totally disabled.

At the October 17, 2000 hearing before the bankruptcy court, Dr. Morehead testified that after an investigation and month-to-month payments, based upon a reservation of rights by Lincoln National, he underwent an independent medical examination at the request of Lincoln National in the Summer of 1999.[2] He further stated that the examiner concluded that he should not return to surgery and that since that time Lincoln National has paid his benefit each month on schedule, although he continues to send them information periodically. From this, the Court infers that Dr. Morehead is continuing to receive monthly lost income/disability benefit payments.

On appeal, the Trustee argues that the bankruptcy court erred in analogizing the debtor's disability policy to a worker's compensation award because, unlike a privately-purchased lost income disability policy, worker's compensation awards are limited by statute. See LaBelle, 18 B.R. at 171 (noting that the amount of worker's compensation awarded is not much higher than is necessary to keep a worker from destitution). Instead, the Trustee compares the Lincoln National disability policy to the right to receive alimony, support or separate maintenance, which is exempt but only to the extent reasonably necessary for the support of the debtor and dependents. See W.Va.Code § 38–10–4(j)(4) and 11 U.S.C. § 522(d)(10)(D). The amount of alimony or support awarded is typically determined by the recipient's pre-separation standard of living, just as the amount of Dr. Morehead's monthly disability payment has been determined by the amount of income he earned prior to becoming disabled. For this reason, the Trustee believes that it is inequitable that Dr. Morehead should receive over $10,000 a month in disability payments, all of which is entirely exempt from the bankruptcy estate, while the median family income in West Virginia is approximately $2,000 per month.

■ In discussing whether or not an individual retirement account (IRA) was exempt from the debtors' bankruptcy estate, the United States Bankruptcy Court for the Western District of Michigan made a similar distinction between the federal § 522(d)(10) exemptions that the Trustee urges upon the Court here.

These first four subsections share a common theme: each enumerated benefit or right to payment is based upon a condition of the recipient typically associated with immediate need. For example, the elderly and disabled frequently rely upon social security and veterans benefits as their sole means of support. The unemployed depend upon unemployment compensation and the poor depend upon public assistance. A divorced spouse and his or her dependents require alimony or other support for their basic needs, especially if they have no other resources ... These benefits are not future wages but instead are quasi-assets.

In re Dale, 252 B.R. 430, 435 (Bankr. W.D.Mich.2000). The court then goes on to note that Congress assumed that some of these benefits would be necessary, without further examination, to support the debtor and his or her dependents, but that:

"[o]n the other hand, Congress was unwilling to make this assumption with respect to payments received on account of alimony or other marital maintenance obligations. Such payments are often the primary if not the only means for the bankrupt debtor to accomplish a post-petition "fresh start." However, alimony obligations can also be extravagant (witness the divorces of the super-rich) or be supplemented by earnings if the bankrupt debtor is also employed. Consequently, Congress limited the exemption of alimony and other marital support payments to only the amount which would be necessary for the sup-

---

**2.** Oct. 17, 2000 transcript at 26.

port of the debtor and the debtor's dependents."

*Dale,* 252 B.R. at 436.

The court further observed that Congress recognized that while bankrupt debtors normally depend on the continuation of payments on account of illness, disability, death, age or length of service, under § 522(d)(10)(E), for their livelihood, the benefits received under such plans, like alimony, could be extravagant or could be supplemented by other sources of revenue. Accordingly, in order to avoid abuse of this exemption, Congress limited the benefits received under this provision to the amounts necessary for the support of the debtor and the debtor's dependents. *Id.* at 437.

This reasoning is persuasive, particularly in light of the equitable nature of proceedings in bankruptcy, and the Court concludes, as a matter of law, that the Lincoln National policy is only partially exempt from the bankruptcy estate, pursuant to W.Va.Code § 38–10–4(j)(5). Even if the Lincoln National policy only replaces approximately 60% of Dr. Morehead's pre-disability income, as the bankruptcy court concluded, his pre-disability earnings were far greater than those of the average family. Permitting the Moreheads to exempt the full amount of the disability payments, which exceed $10,000 per month, is inequitable. Accordingly, the bankruptcy court's denial of the Trustee's objection to the debtors' exemption of the full amount of the disability payments is **REVERSED.**

### V. CONCLUSION

Accordingly, the December 12, 1998 decision of the bankruptcy court denying the Trustee's objection to the debtors' exemption of the disability policy is **AFFIRMED IN PART** and **REVERSED IN PART.**

This matter is **REMANDED** to the bankruptcy court for a hearing to determine the debtors' living expenses and expenditures so as to permit exemption of only that portion of the payments found reasonably necessary to provide support for the debtors and their dependents.

The appeals in Civil Action 1:99CV19 and 1:99CV20 are **DISMISSED** from the docket of this Court.

It is so **ORDERED.**