**PUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

In Re: CATHERINE P. MOREHEAD;
RAYMOND A. MOREHEAD,
                          *Debtors.*

---

MARTIN P. SHEEHAN, Trustee for the
Bankruptcy Estate of Catherine P.
Morehead and Raymond Morehead,
                  *Plaintiff-Appellee,*

v.

RAYMOND A. MOREHEAD,
              *Defendant-Appellant,*

and

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,
                       *Defendant*

No. 01-1172

In Re: CATHERINE P. MOREHEAD;
RAYMOND A. MOREHEAD,
                              *Debtors.*

MARTIN P. SHEEHAN, Trustee for the
Bankruptcy Estate of Catherine P.
Morehead and Raymond Morehead,
                    *Plaintiff-Appellee,*

                    v.                              No. 01-1173

RAYMOND A. MOREHEAD; CATHERINE
P. MOREHEAD,
                    *Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CA-99-19-1, CA-99-20-1, BK-97-11497, AP-98-1031)

Argued: October 31, 2001

Decided: March 5, 2002

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion. Judge Michael wrote the opinion, in
which Judge Motz and Judge King joined.

## COUNSEL

**ARGUED:** Thomas Herbert Fluharty, Clarksburg, West Virginia, for
Appellants. Martin Patrick Sheehan, SHEEHAN & NUGENT,
P.L.L.C., Wheeling, West Virginia, for Appellee.

**OPINION**

MICHAEL, Circuit Judge:

The question in this case is whether a Chapter 7 debtor's right to receive payments under a privately purchased disability insurance policy is fully exempt from the bankruptcy estate under W. Va. Code § 38-10-4(j)(3) or partially exempt "to the extent reasonably necessary for the support" of the debtor and his dependents under Code § 38-10-4(j)(5). Because we cannot assume that payments under this type of policy will be limited to amounts reasonably necessary for support, we hold that the payments are partially exempt under W. Va. Code § 38-10-4(j)(5). We therefore affirm the district court's order directing the bankruptcy court to determine the debtor's "living expenses and expenditures so as to permit exemption of only that portion of the payments found reasonably necessary to provide support for" the debtor and his dependents. *Sheehan v. Lincoln Nat'l Life*, 257 B.R. 449, 457 (N.D. W.Va. 2001).

I.

On May 9, 1997, Dr. Raymond A. Morehead had a very bad day. Early that morning he received a call from Lind-Waldock & Company, a brokerage firm that he used for margin trading in the futures markets. Lind-Waldock informed Dr. Morehead that the market had moved against his open positions and that the firm was making an $850,000 margin call. When Dr. Morehead was unable to meet the margin call, Lind-Waldock liquidated his positions and informed him that he owed the firm $321,038. *See Lind-Waldock & Co. v. Morehead*, 1 Fed. Appx. 104, 105-06 (4th Cir. 2001) (per curiam) (describing Dr. Morehead's dealings with Lind-Waldock in more detail). Later that same day Dr. Morehead was fired from his position as a surgeon at the Veterans' Administration Hospital in Clarksburg, West Virginia. Shortly after these events Dr. Morehead began treatment for drug dependency. His condition proved to be disabling.

Dr. Morehead and his wife, Catherine P. Morehead, filed a voluntary Chapter 7 petition in the Bankruptcy Court for the Northern District of West Virginia on June 4, 1997. The bankruptcy trustee, Martin P. Sheehan, filed a Report of No Distribution on July 16, 1997, and

the case was closed. The trustee discovered a few months later that Dr. Morehead was receiving payments of $10,000 per month under a disability income insurance policy he had purchased from Lincoln National Life Insurance Company in 1986. The Moreheads had not disclosed this policy in their bankruptcy petition. Acting on the trustee's motion, the bankruptcy court reopened the Moreheads' case on February 18, 1998. The trustee promptly filed an adversary proceeding against Lincoln National and Dr. Morehead, seeking an order that would require the defendants to turn over to the bankruptcy estate all past and future payments made under the policy. The Moreheads then amended schedules B and C to their bankruptcy petition. They listed the disability policy as an asset but claimed that payments under the policy were fully exempt from the bankruptcy estate under W. Va. Code § 38-10-4(j)(3), which allows debtors to exempt their right to receive "a disability, illness or unemployment benefit." The trustee objected to the amendment on two grounds. First, he argued that the amendment should be disallowed because the Moreheads' failure to disclose the disability policy in their initial bankruptcy filing was a fraudulent effort to conceal an asset. Second, the trustee argued that even if the amendment was allowed, the disability payments did not qualify as fully exempt under § 4(j)(3); rather, they were partially exempt "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor" under § 4(j)(5).

In an opinion and order dated December 8, 1998, the bankruptcy court denied the trustee's objection to the Moreheads' amended schedules, which included the claim of exemption for the disability policy. The court found that the Moreheads had not fraudulently concealed the policy and concluded that payments under the policy were fully exempt from the bankruptcy estate under W. Va. Code § 38-10-4(j)(3). The bankruptcy court then dismissed as moot the trustee's adversary proceeding against Lincoln National and Dr. Morehead. The trustee appealed to the United States District Court for the Northern District of West Virginia. The district court affirmed the bankruptcy court's finding that the Moreheads did not fraudulently conceal the disability policy; however, the district court reversed the bankruptcy court's decision that the disability payments were fully exempt from the bankruptcy estate. *Sheehan*, 257 B.R. at 457. Reasoning that full exemption of the disability payments would be inequitable and contrary to bankruptcy policy, the district court held that the disability

payments should be partially exempted under W. Va. Code § 38-10-4(j)(5). The district court's order remanded the case to the bankruptcy court for a determination of the extent to which the disability payments were (and are) reasonably necessary for the Moreheads' support. The Moreheads now appeal the district court's decision that payments under the Lincoln National policy are only partially exempt from the bankruptcy estate. This is a decision on a legal issue, and our review is de novo. *In re Meyer*, 244 F.3d 352, 355 (4th Cir. 2001).

## II.

When a debtor files for bankruptcy protection, an estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Federal bankruptcy law allows a debtor to exempt some of his property — mainly basic necessities — from the bankruptcy estate. The exemptions can afford the debtor some economic and social stability, which is important to the fresh start guaranteed by bankruptcy. *See Williams v. U.S. Fid. & Guar. Co.*, 236 U.S. 549, 554-55 (1915). West Virginia has exercised its option under 11 U.S.C. § 522(b) to enact its own exemption scheme. As a result, debtors domiciled in West Virginia, such as the Moreheads, claim exemptions under W. Va. Code § 38-10-4 rather than under the federal bankruptcy code, 11 U.S.C. § 522(d). *See generally* Julia A. Chincheck, *The Effects of West Virginia's Bankruptcy Exemption Statute on Resident Debtors*, 86 W. Va. L. Rev. 227 (1983). At the time the Moreheads filed their bankruptcy petition, the relevant exemption provision in the West Virginia Code provided that:

> Any person who files a petition under the federal bankruptcy law may exempt from property of the estate in a bankruptcy proceeding the following property:
>
> . . .
>
> > (j) The debtor's right to receive:
> >
> > (1) A social security benefit, unemployment compensation or a local public assistance benefit;

(2)    A veterans' benefit;

(3)    A *disability*, illness or unemployment *benefit*;

(4)    Alimony, support or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(5)    *payment under a* stock bonus, pension, profit sharing, annuity or similar plan or *contract on account of* illness, *disability*, death, age, or length of service, *to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . .*

W. Va. Code § 38-10-4(j) (Michie 1997) (emphasis added).* The benefits listed in §§ 4(j)(1)-(3) are fully exempt from the bankruptcy estate without regard to their amount. In contrast, the payments listed in §§ 4(j)(4)-(5) are "partially exempt" in the sense that debtors are entitled to exempt these payments only to the extent that the payments are reasonably necessary for the support of the debtor and his dependents. A debtor may, of course, be entitled to exempt the full amount of a payment classified under §§ 4(j)(4) or 4(j)(5) if the payment does not exceed an amount reasonably necessary for support.

Because W. Va. Code § 38-10-4(j) is identical to 11 U.S.C. § 522(d)(10), we may look to case law interpreting the federal exemptions (and similar state exemptions) for help in interpreting the West Virginia statute. Our task is to decide whether payments made under a privately purchased disability insurance policy should be classified as fully exempt "disability . . . benefit[s]" under W. Va. Code § 38-10-4(j)(3) or partially exempt "payment[s] under a . . . contract on account of . . . disability" under § 4(j)(5). We have not uncovered any case law discussing the relationship between the two disability exemptions in the West Virginia statute, nor have we found case law

---

*Section 38-10-4(j)(5) was amended in 1999 to add an exemption for "funds on deposit in an individual retirement account (IRA), including a simplified employee pension (SEP) regardless of the amount of funds."

discussing the analogous provisions in the federal bankruptcy code. Only two courts, both outside of our circuit, have discussed the treatment of disability payments under state exemption schemes modeled on the federal code. *See In re Bari*, 43 B.R. 253, 255 (Bankr. D. Minn. 1984) (classifying disability payments from an employer as partially exempt under Minnesota exemption modeled on 11 U.S.C. § 522(d)(10)(E)); *Sanders v. Sanders*, 711 A.2d 124, 128 (Me. 1998) (classifying payments under disability insurance policy as partially exempt under Maine exemption modeled on 11 U.S.C. § 522(d)(10)(E)). We thus have a case of first impression in this circuit.

Both sides in this case believe that § 4(j) classifies types of disability benefits or payments as fully or partially exempt on the basis of their source, but each side of course argues for a different result. The respective arguments are based on the fact that the payments come from a privately purchased insurance policy rather than from the government or an employer. We are not convinced by the argument advanced by either side. The trustee claims that the use of the word "benefit" in § 4(j)(3) establishes that the "disability, illness or unemployment" benefits referred to there are government benefits. He therefore argues that Dr. Morehead's disability payments must fall under § 4(j)(5) because they do not come from the government. The most obvious problem with this argument is that the word "benefit" is not restricted to government benefits. Black's Law Dictionary defines "benefit" in part as "[f]inancial assistance that is received from an employer, insurance, or a public program (such as social security) in time of sickness, disability, or unemployment." Black's Law Dictionary 151 (7th ed. 1999). Indeed, the Lincoln National policy itself describes the payments made to Dr. Morehead as his "total disability monthly benefit." The trustee's interpretation of § 4(j)(3) is also inconsistent with a leading bankruptcy treatise, which describes the analogous federal exemption, 11 U.S.C. § 522(d)(10)(C), as exempting "[t]emporary contractual benefits, most of which will arise from the debtor's employment." 2 William L. Norton, Jr., *Norton Bankruptcy Law & Practice 2d* § 46:17 (Supp. 1999). Consequently, the fact that Dr. Morehead's disability payments come from an insurance company rather than from the government does not mean that they must be classified under § 4(j)(5) rather than § 4(j)(3).

The Moreheads, arguing for the opposite result, claim that the § 4(j)(5) exemption covers only rights to payment that arise from the debtor's employment. Because Dr. Morehead's insurance contract with Lincoln National was not obtained through his employer, the Moreheads contend that the disability payments received by Dr. Morehead must be exempt under the other provision, § 4(j)(3). There is no case law interpreting § 4(j)(5), but courts have not read the analogous federal provision, 11 U.S.C. § 522(d)(10)(E), to be limited solely to plans or contracts provided by or through the debtor's employer. For example, many courts have held that individual retirement accounts (IRAs) fall within the scope of 11 U.S.C. § 522(d)(10)(E). *See, e.g.*, *In re Rawlinson*, 209 B.R. 501, 508 (B.A.P. 9th Cir. 1997); *In re Link*, 172 B.R. 707, 711 (Bankr. D. Mass. 1994); *In re Cilek*, 115 B.R. 974, 1000 (Bankr. W.D. Wis. 1990). The *Cilek* court explicitly rejected the argument that only a plan or contract established by the debtor's employer is exempt under § 522(d)(10)(E). *Cilek*, 115 B.R. at 987 n.14. Although some courts have ruled that IRAs are not exempt under § 522(d)(10)(E), *see, e.g.*, *In re Moss*, 143 B.R. 465, 467 (Bankr. W.D. Mich. 1992), no court has explained this result by reasoning that IRAs are not provided by the debtor's employer. *Cf. Cilek*, 115 B.R. at 978 (listing various reasons courts have given for concluding that IRAs are not exempt under § 522(d)(10)(E)). As a result, we reject the Moreheads' argument that Dr. Morehead's disability payments must be fully exempt under § 4(j)(3) simply because he did not obtain the right to those payments from or through his employer.

The failure of both of these arguments means that we cannot always look to the source of the payments to tell the difference between the "disability benefits" fully exempted by § 4(j)(3) and the "payments under a contract on account of disability" partially exempted by § 4(j)(5). A leading bankruptcy treatise suggests an alternative approach: distinguish between the two disability exemptions on the basis of the duration of the payments rather than their source. The treatise states that 11 U.S.C. § 522(d)(10)(C), the federal analog of West Virginia Code § 38-10-4(j)(3), covers "[t]emporary contractual benefits," whereas 11 U.S.C. § 522(d)(10)(E), the federal analog of § 38-10-4(j)(5), covers "permanent employment-related benefits." 2 Norton, *supra*, § 46:17. One state court (in Maine) has recited this distinction in classifying certain disability insurance pay-

ments as partially exempt under a state provision modeled on 11 U.S.C. § 522(d)(10)(E). *See Sanders*, 711 A.2d at 128. Whatever the merits of this approach as a general matter, we do not find it helpful here because the payments provided by disability insurance policies like Dr. Morehead's are not readily classified as either permanent or temporary. Some benefits, such as retirement benefits that will continue until death, are clearly permanent. And benefits with a short, fixed time limitation (for example, unemployment benefits running for ninety days) are clearly temporary. Disability insurance payments fall somewhere in the middle. For example, Dr. Morehead's payments could continue until he reaches age 65 (another twelve-and-one-half years) or they could stop tomorrow if his disability ends. Indeed, the record does not indicate whether Dr. Morehead is still disabled or how long he will remain disabled. This kind of uncertainty about the length of a disability is not uncommon, and under such circumstances courts have no principled way to decide how permanent or temporary the disability payments will be. We therefore conclude that the distinction between temporary and permanent benefits is not helpful in deciding whether the § 4(j)(3) or the § 4(j)(5) exemption applies in this case.

The discussion so far suggests that payments under privately purchased disability insurance policies do not fit neatly within either the § 4(j)(3) or the § 4(j)(5) exemption. Perhaps policies like Dr. Morehead's simply escaped the attention of the West Virginia legislature and Congress when they drafted their lists of bankruptcy exemptions. *Cf. In re Thomas*, 1990 WL 62438, at *3 n.2 (Bankr. D. Minn. 1990) (suggesting that "Congress probably did not consider which, if any, exemption should apply to [workers' compensation] awards"). The West Virginia legislature simply adopted the federal exemptions verbatim when it passed § 38-10-4(j), and there is no legislative history on that statute. The legislative history of the analogous federal exemption, 11 U.S.C. § 522(d)(10), is not helpful. That history explains only that § 522(d)(10) "exempts certain benefits that are akin to future earnings of the debtor." H.R. Rep. No. 95-595, at 362 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6318. Because all payments on account of disability are meant to replace future earnings, this history sheds no light on Congress's decision to allow full exemption of some disability payments while allowing only partial exemption of others. In the absence of any indication of specific legis-

lative intent about the treatment of payments under privately purchased disability insurance contracts, we will explore whether full or partial exemption of these payments is more consistent with the policy behind the bankruptcy exemptions.

Congress succinctly reiterated this policy when it enacted the Bankruptcy Reform Act of 1978:

> The historical purpose of . . . exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. [This] purpose has not changed. . . .

H.R. Rep. No. 95-595, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. at 6087. In short, the bankruptcy exemptions are designed to help the debtor make a "fresh start." *See Wright v. Union Cent. Life Ins. Co.*, 304 U.S. 502, 514 (1938) ("The development of bankruptcy legislation has been towards relieving the honest debtor from oppressive indebtedness and permitting him to start afresh."). W. Va. Code § 38-10-4(j) and 11 U.S.C. § 522(d)(10) give effect to this policy by insuring that debtors who rely on non-wage income are not deprived of life's basic necessities.

The most notable distinction between the various exemptions listed in W. Va. Code § 38-10-4(j) is that between full and partial exemptions. Sections 4(j)(1)-(3) list benefits that are fully exempt, while §§ 4(j)(4) and 4(j)(5) list benefits or payments that are exempt only to the extent reasonably necessary for the support of the debtor and his dependents. We can imagine only two possible reasons why the West Virginia legislature (or Congress) would make this distinction. One is that the legislature might have believed that certain types of payments (those listed in §§ 4(j)(1)-(3)) ought to be available to debtors even when the payments exceed the amount reasonably necessary for support. But this explanation is totally inconsistent with the bankruptcy policy of allowing debtors a chance to start over, exempting only the basic means to support that chance. This policy suggests that debtors are never entitled to exempt more than is reasonably necessary for support. The more logical reason for the legislature's decision

to allow full rather than partial exemption for certain types of benefits is this: the legislature believed that the fully exempt benefits (for example, social security, unemployment compensation, and veterans' benefits) listed in §§ 4(j)(1)-(3) could be *assumed* to be no more than an amount reasonably necessary for the support of the debtor and his dependents. *See In re Dale*, 252 B.R. 430, 436 (Bankr. W.D. Mich. 2000) (observing that in enacting the analogous federal exemptions in 11 U.S.C. § 522(d)(10)(A)-(C), "Congress simply assumed that the benefit[s] would be necessary [for the support of the debtor] without further examination"). This explanation for the structure of the statute shows why the legislature specifically classified the social security, unemployment compensation, public assistance, and veterans' benefits listed in §§ 4(j)(1)-(2) as fully exempt. No one lives lavishly on these benefits. By the same token, workers' compensation benefits, which are not listed in the statute, should also be classified as fully exempt under § 4(j)(3), for these benefits can be assumed to be "not much higher than is necessary to keep the worker from destitution." *In re Cain*, 91 B.R. 182, 183 (Bankr. N.D. Ga. 1988) (internal quotation marks and citation omitted) (holding that workers' compensation benefits are fully exempt under 11 U.S.C. § 522(d)(10)(C), the federal analog of W. Va. Code § 38-10-4(j)(3)). *Accord In re Evans*, 29 B.R. 336, 338-39 (Bankr. D. N.J. 1983); *In re LaBelle*, 18 B.R. 169, 171 (Bankr. D. Me. 1982).

In contrast to the full exemptions in §§ 4(j)(1)-(3), the exemptions in §§ 4(j)(4)-(5) are limited because alimony payments and payments under plans and contracts of the sort listed in § 4(j)(5) have the potential in some cases to exceed greatly what is reasonably necessary for support of the debtor and his dependents. Though most alimony payments may be necessary for support, they can be "extravagant (witness the divorces of the super-rich) or be supplemented by earnings if the bankrupt debtor also is employed." *Dale*, 252 B.R. at 436. Similarly, payments from stock bonus plans, profit sharing plans and the like are not inherently limited to amounts reasonably necessary for support of the debtor and his dependents. *See, e.g.*, *In re Woodford*, 73 B.R. 675, 681-82 (Bankr. N.D. N.Y. 1987) (holding that only 30 percent of the money in a bankrupt lawyer's retirement plan was reasonably necessary for his support). We believe, then, that the West Virginia legislature classified various types of benefits and payments as fully or partially exempt in § 38-10-4(j) by making assumptions

about whether these benefits and payments would be limited to amounts reasonably necessary for the support of the debtor and his dependents. Using this approach, the legislature created two categories of disability-related payments: "disability benefits" fully exempted by § 4(j)(3) and "payments under a contract on account of disability" partially exempted by § 4(j)(5). The legislature created the two categories because it reasoned that some, but not all, disability payments could be assumed to be limited to amounts reasonably necessary for support. Accordingly, the right to receive payments under a privately purchased disability insurance contract is fully exempt from the bankruptcy estate under § 4(j)(3) only if payments of this type can be assumed to be limited to amounts reasonably necessary for the support of the debtor and his dependents.

The facts of this case illustrate why we cannot assume that payments under a privately purchased disability insurance contract will be limited to amounts reasonably necessary for support. Dr. Morehead's policy originally paid benefits of $10,000 per month, with payments increasing later to $13,000 per month under the policy's cost-of-living rider. These amounts might be reasonably necessary to maintain the lifestyle to which the Moreheads had been accustomed, but the standard of reasonable necessity in bankruptcy law is a more modest one. In the leading case of *In re Taff*, 10 B.R. 101 (Bankr. D. Conn. 1981), the court explained that the "appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed." *Id.* at 107. In short, the fresh start guaranteed by bankruptcy, and supported by the exemption scheme, does not entitle a debtor to maintain the lifestyle to which he was accustomed in better times. This point is confirmed by other West Virginia exemptions. *Cf.* W. Va. Code § 38-10-4(a) (limiting exemption for interest in real or personal property used as a residence to $15,000); § 38-10-4(b) (limiting exemption for interest in motor vehicles to interest in one vehicle up to the value of $2,400). Because the payments under Dr. Morehead's disability policy appear to be considerably more than what is sufficient for basic needs, the district court was correct to order a remand for the bankruptcy court to determine the extent to which the disability payments are reasonably necessary for the Moreheads' support.

In sum, we hold that the right to receive payments under a privately purchased disability insurance policy is partially exempt from the bankruptcy estate under W. Va. Code § 38-10-4(j)(5) rather than fully exempt under § 38-10-4(j)(3). This holding is required because we cannot assume that payments under such a policy will be limited to amounts reasonably necessary for the support of the debtor and his dependents. Of course, we are not saying that a debtor may never exempt the full amount of these payments from the bankruptcy estate. He may do so if the full amount is reasonably necessary for his and his dependents' support.

### III.

We affirm the district court's decision that Dr. Raymond A. Morehead's right to receive payments under the Lincoln National disability policy is partially exempt from the bankruptcy estate under W. Va. Code § 38-10-4(j)(5). We also affirm the district court's order remanding the case for the bankruptcy court to determine the extent to which the payments under the policy are reasonably necessary for the support of Dr. Morehead and his dependents.

*AFFIRMED*